Tyler J. Anderson, ISB No. 6632
John C. Hughes, ISB No. 7606
Caitlin D. Kling, ISB No. 9565
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  208.344.6000
Facsimile:  208.954.5275
Email: tanderson@hawleytroxell.com
        jhughes@hawleytroxell.com
        ckling@hawleytroxell.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STAR DIALYSIS, LLC; ORDUST DIALYSIS, LLC; ROUTT DIALYSIS, LLC; PANTHER DIALYSIS, LLC; and DAVITA INC.,<br><br>          Plaintiffs,<br><br>vs.<br><br>WINCO FOODS EMPLOYEE BENEFIT PLAN; WINCO FOODS, LLC; and WINCO HOLDINGS, INC.,<br><br>          Defendants. | Case No. 1:18-cv-00482-EJL<br><br>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

I.      BACKGROUND ....................................................................................................1

II.     LEGAL STANDARD...........................................................................................1

III.    ARGUMENT .......................................................................................................2

        A.      DaVita Does Not Have Standing to Bring ERISA Claims.............................2

        B.      DaVita Fails to State a Claim for Relief Under the MSPA
                Because DaVita Has Not Alleged Facts to Demonstrate Medicare
                Advanced Medical Costs on Behalf of a WinCo Plan Participant
                (Count One). .................................................................................................5

        C.      DaVita Fails to State a Claim for Injunctive Relief and Equitable
                Relief Under ERISA (Count Two). ...............................................................15

                1.      Allegation as to MSPA. ....................................................................15

                2.      Allegation as to ERISA......................................................................15

        D.      DaVita Fails to Allege Sufficient Facts to State a Claim for Relief
                for ERISA Benefits (Count Three). ..............................................................18

        E.      DaVita Has Failed to State a Claim for Equitable Relief (Count
                Four)..............................................................................................................19

        F.      DaVita Fails to State a Claim for Negligent Misrepresentation,
                Promissory Estoppel, and Quantum Meruit Under State Law
                (Count Five). .................................................................................................22

IV.     CONCLUSION....................................................................................................23

47568.0004.11538085.3

# TABLE OF CASES AND AUTHORITIES

**Page**

**Cases**

*Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*,
   2017 WL 4868180 (N.D. Tex. 2017)...................................................................... 4

*Aetna Health v. Davila*,
   542 U.S. 200, 124 S. Ct. 2488, 159 L.Ed.2d 312 (2004)........................................ 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................... 1

*Bakker v. Thunder Spring-Wareham, LLC*,
   141 Idaho 185, 108 P.3d 332 (2005) ..................................................................... 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................ 1, 2

*Bio-Med. Applications of Tenn. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*,
   656 F.3d 277 (6th Cir. 2011) ................................................................................. 5

*Bio-Medical App. of Ga. v. City of Dalton, Ga.*,
   685 F. Supp. 2d 1321 (N.D. Ga. 2009).................................................................. 9

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011).............................................................................................. 21

*Davidowitz v. Delta Dental Plan of Cal., Inc.*,
   946 F.2d 1476 (9th Cir. 1991) ............................................................................... 3

*DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*,
   852 F.3d 868 (9th Cir. 2017) ............................................................................... 3, 4

*Duffin v. Idaho Crop Imp. Ass'n*,
   126 Idaho 1002, 895 P.2d 1195 (1995) ................................................................. 22

*Frazer v. CNA Ins. Co.*,
   374 F. Supp. 2d 1067 (N.D. Ala. 2005)................................................................. 10

*Gabriel v. Alaska Elec. Pension Fund*,
   773 F.3d 945 (9th Cir. 2014) ................................................................................ 20

47568.0004.11538085.3

*Glover v. Philip Morris USA,*
   380 F. Supp. 2d 1279 (M.D. Fla. 2005) ................................................................. 10

*Greany v. W. Farm Bureau Life Ins. Co.,*
   973 F.2d 812 (9th Cir. 1992) ............................................................................... 20

*Great Plains Equip., Inc. v. Nw. Pipeline Corp.,*
   132 Idaho 754, 979 P.2d 627 (1999) .................................................................. 23

*Grover v. Wadsworth,*
   147 Idaho 60, 205 P.3d 1196 (2009) .................................................................. 22

*Hapeville Dialysis Ctr., LLC v. City of Atlanta, Ga.,*
   2013 WL 831635 (N.D. Ga. 2013) ....................................................................... 11

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ................................................................................. 2

*Leggette, et al. v. B.V. Hedrick Gravel & Sand Co., et al.,*
   Case No. 3:04–CV–00530–CH (W.D.N.C. May 24, 2006) .................................... 9

*Manning v. Utils. Mut. Ins. Co. Inc.,*
   254 F.3d 387 (2d Cir. 2001) .................................................................................. 9

*Mertens v. Hewitt Assocs.,*
   508 U.S. 248 (1993) ............................................................................................ 20

*Nat'l Renal Alliance, LLC v. Blue Cross & Blue Shield of Ga., Inc.,*
   598 F. Supp. 2d 1344 (N.D. Ga. 2009) ......................................................... 10, 11

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir.1998) .................................................................................. 2

*Reg'l Med. Ctr. of San Jose v. WH Adm'rs, Inc.,*
   2017 WL 6513441 (N.D. Cal. 2017) ...................................................................... 3

*Simplot Livestock Co. v. Sutfin,*
   No. 1:18-CV-0086-EJL-CWD, 2018 WL 4259229 (D. Idaho Sept. 6, 2018) .................. 1, 2

*Skinner v. Northrop Grumman Ret. Plan B,*
   673 F.3d 1162 (9th Cir. 2012) ............................................................................. 21

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.,*
   770 F.3d 1282 (9th Cir. 2014), *cert denied* ........................................................ 2, 3

iii

*Spink v. Lockheed Corp.*,
   125 F.3d 1257 (9th Cir. 1997) ........................................................... 21

*Swensen v. United Omaha Life Ins. Co.*,
   876 F.3d 809 (5th Cir. 2017) ............................................................. 20

*United Healthcare of Ariz. v. Spinedex Physical Therapy USA, Inc.*,
   ⸺ U.S. ⸺, 136 S. Ct. 317, 193 L.Ed.2d 227 (2015) ........................... 2

*Vaughn v. Bay Envtl. Mgmt., Inc.*,
   567 F.3d 1021 (9th Cir. 2009) ............................................................. 4

*Woods v. Empire Health Choice, Inc.*,
   No. 05–CV–0577 (DLI)(LB), 2007 WL 2406876 (E.D.N.Y. Aug. 20, 2007) ........................ 10

**Statutes**

29 C.F.R. § 2590.702 ...................................................................... 16, 17, 18

29 U.S.C. § 1132 .................................................................. 2, 3, 4, 15, 16, 18, 20, 23

29 U.S.C. § 1144 .................................................................................. 22

29 U.S.C. § 1182 ............................................................................. 15, 18

42 C.F.R. § 411.161 ......................................................................... 13, 14

42 C.F.R. §§ 411.108 ............................................................................ 14

42 U.S.C. § 1395 .......................................................................... 6, 8, 12

60 FED. REG. 45344-01 ......................................................................... 14

66 FED. REG. 1378 ............................................................................... 18

FED. R. CIV. P. 12 ................................................................................. 1

47568.0004.11538085.3

Defendants WinCo Foods Employee Benefit Plan; WinCo Foods, LLC; and WinCo Holdings, Inc. (collectively, "Defendants"), respectfully submit this Memorandum in Support of Motion to Dismiss against Star Dialysis, LLC; Ordust Dialysis, LLC; Routt Dialysis, LLC; Panther Dialysis, LLC; and DaVita, Inc. (collectively, "DaVita").

## I.     BACKGROUND

On October 30, 2018, DaVita filed its Complaint, which asserted five claims against Defendants, including: Count One – Double Damages under the Medicare Single Payer Act; Count Two – Injunctive and Other Equitable Relief under ERISA; Count Three – Benefits under ERISA; Count Four – Equitable Relief under ERISA for Failure to Disclose and Misrepresentations; and Count Five – Negligent Misrepresentation, Promissory Estoppel, and Quantum Meruit under State Law. For the reasons set forth below, Defendants respectfully request that the Court dismiss the Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     LEGAL STANDARD

In general, a motion to dismiss will be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Simplot Livestock Co. v. Sutfin*, No. 1:18-CV-0086-EJL-CWD, 2018 WL 4259229, at *2 (D. Idaho Sept. 6, 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability standard,' but asks for more than a sheer possibility that a defendant has acted lawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Although the Court

"must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Simplot Livestock Co.*, No. 1:18-CV-0086-EJL-CWD, 2018 WL 4259229, at *2.

A court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.1998)).

## III.   ARGUMENT

### A.    DaVita Does Not Have Standing to Bring ERISA Claims.

Among the parties who may sue under ERISA are health plan "beneficiaries." Here, DaVita argues that it is a "beneficiary" under ERISA and is therefore entitled to seek recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) and equitable relief under 29 U.S.C. § 1132(a)(3). *See* Compl. ¶¶ 86-102 (Dkt. 1). However, health care providers are not considered "beneficiaries" within the meaning of ERISA, and "a non-participant health care provider . . . cannot bring claims for benefits on its own behalf." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014), *cert. denied, United Healthcare of Ariz. v. Spinedex Physical Therapy USA, Inc.*, —— U.S. ——, 136 S. Ct. 317, 193 L.Ed.2d 227 (2015).

The reason for this rule is that it is the patients who receive health benefits, not the health care providers. "Neither a designation in a health benefit plan nor an assignment by a patient allowing a health care provider to receive direct payment for health services entitles a health care provider to "benefits" on *its own* behalf." *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 875 (9th Cir. 2017) (emphasis added). Since providers are not considered "beneficiaries," they do not have direct authority to sue under 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3) .

In order for health care providers to bring a claim for benefits, they must do so derivatively, relying on its patients' assignments of their benefits claims. *Spinedex*, 770 F.3d at 1289. In appropriate circumstances, a health care provider will have derivative standing to assert the claims of an ERISA participant or beneficiary. *DB Healthcare, LLC*, 852 F.3d at 876. However, where the governing employee benefit plans contain nonassignment (or antiassignment) clauses, health care providers will lack derivative standing. *Id.* Where there is an express nonassignment clause in a plan, ERISA welfare plan payments are not assignable. *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991); *Reg'l Med. Ctr. of San Jose v. WH Adm'rs, Inc.*, 2017 WL 6513441, at *4 (N.D. Cal. 2017) (stating there is ample authority holding that antiassignment provisions are valid and enforceable).

As DaVita is not considered a "beneficiary" under ERISA, the only way for it to bring claims for benefits would be to do so derivatively through reliance on assignments from patients. *Id.* This is how DaVita is attempting to proceed in this case. DaVita has asserted that it is the beneficiaries' assignee, and is entitled to claim benefits on behalf of its patients.

However, DaVita lacks derivative standing to sue under 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3) because the WinCo Holdings, Inc. Employee Benefit Plan Document and Summary Plan Description (the "WinCo Plan" or "Plan") contains an antiassignment provision, which states:

> **21.7.5 Nonassignability of Rights**
> The right of any Participant to receive any reimbursement under the Plan shall not be alienable by the Participant by assignment or any other method, and shall not be subject to the rights of creditors, and any attempt to cause such right to be so subjected shall not be recognized, except to such extent as may be required by law.

Declaration of Nikki Hyer Ex. A, WinCo Holdings, Inc. Employee Benefit Plan, at 74. Because the Plan contains an antiassignment clause, these claims are not assignable. As a result, DaVita lacks derivative standing to pursue these claims. Accordingly, the ERISA claims (Counts Two, Three, and Four) should be dismissed.[1]

Further, the alleged bases of recovery under Counts Two, Four, and Five for equitable relief (and state law theories) go beyond the recovery of benefits, and thus cannot be brought by DaVita. The scope of the assignments are unknown and have not been adequately pled in the Complaint. The assignments should be narrowly construed such that standing does not exist relative to the nonbenefit claims. *See Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, 2017 WL 4868180 at *4 (N.D. Tex. 2017). *DB Healthcare, LLC*, 852 F.3d at 876. As such, these claims should be dismissed.

---

[1] "[A] dismissal for lack of statutory standing [under ERISA] is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction." *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

47568.0004.11538085.3

**B.** **DaVita Fails to State a Claim for Relief Under the MSPA Because DaVita Has Not Alleged Facts to Demonstrate Medicare Advanced Medical Costs on Behalf of a WinCo Plan Participant (Count One).**

In Count One of the Complaint, DaVita attempts to invoke the private action provision of the Medicare Secondary Payer Act ("MSPA") and seeks "double damages" under federal law. The fatal flaw in Count One is that DaVita ignores that a private cause of action under the MSPA exists only when Medicare is made to shoulder medical costs that a primary plan has failed to pay. DaVita does not allege that Medicare has advanced any payments to WinCo plan beneficiaries, nor can it. To the contrary, for each of the six patients from whom DaVita claims an assignment, DaVita affirmatively alleges that the WinCo Plan has authorized payment be sent directly to DaVita. *See* Compl. ¶¶ 60.k, 61.k, 62.h, 63.h, 64.h, and 65.h (Dkt. 1). There is no allegation in the Complaint that Medicare has been involved in any way with the payment or reimbursement scheme for DaVita's dialysis services. The real issue is that DaVita is complaining about the amount that it is being reimbursed under the WinCo Plan as of January 2017, but in no way does the Complaint attempt to vindicate the rights of Medicare under the MSPA.

In its Complaint, DaVita cites liberally to *Bio-Medical Applications of Tennessee v. Central States Southeast & Southwest Areas Health & Welfare Fund*, 656 F.3d 277 (6th Cir. 2011) (hereinafter "*Bio-Med of Tenn.*"). A careful review of the *Bio-Med of Tenn.* case reveals the true purpose of the MSPA and, as a result, exposes DaVita's failure to state a claim under the MSPA private action provision. Medicare is a federal health insurance program that provides health insurance to persons over the age of 65, disabled people, or people with ESRD. *Id. at* 281. In 1980, Congress passed the MSPA to counteract rising Medicare costs. *Id. at* 278. Prior to the

passage of the MSPA, "Medicare paid for all treatment within its scope and left private insurers merely to pick up whatever expenses remained." *Id.* The MSPA changed that scheme by making private insurers covering the same treatment the "primary" payers and Medicare the "secondary" payer. *Id.* The primary payer becomes responsible for paying the patient's medical treatment, but if Medicare expects the primary payer will not pay promptly, then Medicare can advance a "conditional payment" and later seek reimbursement from the primary payer. *Id.* at 281.

The Sixth Circuit addressed the following within the context of the MSPA: "who should bear the cost of kidney dialysis treatment—private insurers, healthcare providers, or Medicare—and the proportionate responsibility of each." *Id.* In answering the questions presented, the Sixth Circuit held that a group health plan cannot deny coverage to one of its insureds simply because that person became eligible for Medicare after being diagnosed with ESRD. *Id.* To implement the MSPA, Congress prevents a private health plan from taking two actions toward an individual with ESRD. First, the MSPA states that a private health plan "may not take into account that an individual is entitled to or eligible for" Medicare benefits due to ESRD. *Id.* at 281, citing 42 U.S.C. § 1395y(b)(1)(C). Second, a health plan "may not differentiate in the benefits it provides between individuals having [ESRD] and other individuals covered by such a plan on the basis of existence of [ESRD], the need for renal dialysis, or in any other manner. . . ." *Id.* at 281, citing 42 U.S.C. § 1395y(b)(1)(C).

In *Bio-Med of Tenn*., Central States provided health insurance to its employees and others. *Id.* at 280. A patient insured by the plan received dialysis treatment from Bio-Medical. *Id.* In the beginning, Bio-Medical submitted its bills for treatment to Central States and received payment for services rendered. *Id.* Three months after the patient was diagnosed with ESRD, she

became entitled to Medicare benefits. *Id.* Her insurance plan specifically provided that coverage ceased because she became eligible for Medicare. *Id.* Central States did not learn until later that the patient became entitled to Medicare benefits and continued to pay Bio-Medical for two more months. *Id.* Upon discovering that the patient was eligible for Medicare benefits, Central States terminated her from the benefits plan. *Id.* Bio-Medical informed Central States that it believed it was unlawful to terminate coverage due to a patient's entitlement to Medicare. *Id.* Bio-Medical continued to provide services to the patient and bill Central States, but Central States refused to make any further payments. *Id.* Central States also sought to back-charge Bio-Medical for the payments it had made retroactive to the date the patient became Medicare eligible, claiming overpayment for approximately two months. *Id.*

The Sixth Circuit held Central States violated the MSPA. A group health plan "'takes into account' that an individual is entitled to Medicare benefits due to end-stage renal disease when it terminates coverage for that reason." *Id.* at 282. "The shifting of costs from private plans to the public fisc was exactly the evil that the [MSPA] sought to correct." *Id.* (citations omitted). The Sixth Circuit reasoned, "If private plans could terminate coverage whenever a planholder became entitled to Medicare, then private plans often would do just that, thereby forcing Medicare to bear the full burden by itself. Medicare would not be the secondary payer; it would be the *only* payer." *Id.* at 283 (emphasis in original). Accordingly, Central States violated the MSPA by terminating the patient's coverage because she became Medicare eligible due to her ESRD. *Id.* at 284.

The Sixth Circuit then turned to the question of Bio-Medical's enforcement under the MSPA's private action provision based on Central States' violation of the MSPA. *Id.* The private

47568.0004.11538085.3

action provision of the MSPA states: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A) [of this Section]." *See* 42 U.S.C. § 1395y(b)(3)(A). Under paragraph (1) of the MSPA, a group health plan is prohibited from "taking into account" that a planholder is entitled to Medicare benefits due to being at least 65 years old, disabled, or diagnosed with ESRD. *Id.* at 285. Under paragraph (2)(A) of the MSPA, Medicare may not pay when a primary plan is reasonably expected to pay under paragraph (1). *Id.* The Sixth Circuit held that a primary plan violates paragraphs (1) and (2)(A) and becomes liable under the MSPA private action provision "when it discriminates against planholders on the basis of their Medicare eligibility ***and therefore*** causes Medicare to step in and (temporarily) foot the bill." *Id.* at 286 (emphasis added). Upon interpreting the MSPA, the Sixth Circuit held that Central States was liable to Bio-Medical under the private action provision. *Id.* at 287. "By terminating the patient's coverage due to her Medicare entitlement (in violation of the Act) and inducing Medicare to make a conditional payment to Bio-Medical, Central States 'failed to provide for primary payment . . . in accordance with paragraphs (1) and (2)(A).'" *Id.*

Unlike the facts in *Bio-Med of Tenn.*, the facts alleged in the Complaint differ here insofar as:

- There is no allegation that WinCo terminated coverage for any Plan participant because of Medicare eligibility;

- There is no allegation that WinCo made Plan-based decisions by taking into consideration individual Plan beneficiaries receiving ESRD dialysis;

- There is no allegation that the WinCo Plan discriminated against a participant which therefore caused Medicare to step in and temporarily foot the bill;

47568.0004.11538085.3

- There is no allegation that WinCo engaged in conduct that caused Medicare to make a primary payment to DaVita;

- There is no allegation that WinCo engaged in conduct that caused Medicare to make conditional payments to DaVita and seek reimbursement from the WinCo Plan; and

- There is no allegation that the WinCo Plan failed to make payments promptly to DaVita.

Taking a step back to look at the statutory framework and the case law analyzing the purpose for the private action under the MSPA serves to reveal the true motivation behind the Complaint: DaVita is aggravated with the reimbursement levels it now receives under the WinCo Plan, but that aggravation does not give rise to a private cause of action under the MSPA. What is obfuscated in the Complaint is the fact that the WinCo Plan has authorized payment directly to DaVita, which eliminates entirely any potential for Medicare to make payments and create the potential for a private action under the MSPA. DaVita is not getting compensated at the levels it was prior to 2017, which is a matter that rests between DaVita and the WinCo Plan, but in no way involves Medicare or the principles that undergird the MSPA.

Courts that have examined the issue presented to the Court have held that a claim exists under the private action provision of the MSPA "only where Medicare has, in fact, paid claims that a primary insurer should have, but refused, to pay." *Bio-Medical App. of Ga. v. City of Dalton, Ga.*, 685 F. Supp. 2d 1321, 1332 (N.D. Ga. 2009) (dismissing private action under MSPA for double damages where Medicare made no conditional payments for a patient's kidney dialysis treatment) (collecting cases).[2] Moreover, at least one court has examined a situation

---

[2] *Leggette, et al. v. B.V. Hedrick Gravel & Sand Co., et al.*, Case No. 3:04–CV–00530–CH, at *19 (W.D.N.C. May 24, 2006); *Manning v. Utils. Mut. Ins. Co. Inc.*, 254 F.3d 387, 391-92 (2d Cir. 2001) ("Congress has authorized a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they were

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 9

where a plan has made the decision to lower reimbursement rates on dialysis treatment to out-of-network facilities and concluded that decision did not violate the MSPA by "taking into account" or "differentiating" a level of coverage provided to this with ESRD. *Nat'l Renal Alliance, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 598 F. Supp. 2d 1344, 1354 (N.D. Ga. 2009). In *National Renal*, the plaintiffs, who were dialysis care providers, complained that Blue Cross violated its plan terms when it reduced its reimbursement rates for out-of-network providers. The court in *National Renal* found that the decision to provide lower reimbursement rates for out-of-network providers did not violate the MSPA, and reasoned that:

> [In] the context of the Medicare as a Secondary Payer Act, the court finds that Plaintiffs have not demonstrated that Blue Cross's decision to lower reimbursement rates on dialysis treatment received at out-of-network facilities constitutes "taking into account" or "differentiating" a level of coverage provided to those suffering from ESRD and those not. ***Blue Cross's actions do not run afoul of the implementing regulations because they provide the same level of reimbursement for out-of-network dialysis treatment regardless of the insured's reason for receiving the treatment. The fact that Blue Cross has determined that it will pay a lower rate of reimbursement for dialysis treatments received at out-of-network facilities does not alter the benefits granted to a Medicare enrollee as opposed to a non-Medicare enrollee***. Further, the court finds that Plaintiffs have not established that a health plan's decision to lower reimbursement rates to its members for services received at an out-of-network facility impacts the Medicare as a Secondary Payer Act.

---

responsible, which are borne in fact by Medicare."); *Woods v. Empire Health Choice, Inc.*, No. 05–CV–0577 (DLI)(LB), 2007 WL 2406876, at *2 (E.D.N.Y. Aug. 20, 2007) ("§ 1395y(b)(3)(A) allows 'individuals whose medical bills are improperly denied by insurers and instead paid by Medicare' to bring suit, and 'the government is subrogated to the right of the private citizen for the recovery of such funds.'"); *Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279, 1282 (M.D. Fla. 2005) ("The MSP also contains a private right of action which gives private citizens an incentive to aid the government in recovering 'funds erroneously paid by Medicare.'"); and *Frazer v. CNA Ins. Co.*, 374 F. Supp. 2d 1067, 1078 (N.D. Ala. 2005) ("The consensus of reported cases is that 'a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they are responsible, which are borne in fact by Medicare'").

*National Renal*, 598 F. Supp. 2d at 1354 (emphasis added).

In yet another case where a plan was accused of taking into account a patient's eligibility for ESRD-based Medicare benefits and of impermissibly differentiating the benefits provided to individuals with ESRD and those without, a federal district court granted a motion to dismiss based on the lack of an allegation that Medicare was made to pay claims. *Hapeville Dialysis Ctr., LLC v. City of Atlanta, Ga.*, 2013 WL 831635 (N.D. Ga. 2013). In *Hapeville Dialysis*, a provider of renal dialysis services sued a health care plan for care provided to a patient under the plan. *Id. at* *1. The plaintiff provider submitted claims for the patient's dialysis treatment in the amount of $571,625 to the plan's third party administrator, Blue Cross. *Id.* Blue Cross concluded that the plan only covered $40,000 of that amount, with the patient being responsible for a copayment of $1,416.21. *Id.* Accordingly, the plan paid $38,583.49 to the provider and, according to Blue Cross, the patient was responsible for paying the remainder of $531,625, plus the copayment. *Id.* The provider brought suit under the private action provision of the MSPA to recover the balance owed for the treatment. *Id.* The defendant, as WinCo does here, filed a motion to dismiss based on the failure to allege that Medicare paid any of the amounts charged the provider. *Id.* The district court granted the motion to dismiss.

In opposing the motion to dismiss, the plaintiff provider argued that "nowhere in the text of the private cause of action provision is the right to action made contingent on Medicare's payment of medical costs." *Id. at* *2. The district court rejected plaintiff's argument and began its analysis by reviewing *Bio-Med of Tenn.*, the Sixth Circuit case liberally cited in DaVita's Complaint. *Id.* The district court concluded that the "Sixth Circuit's analysis [in *Bio-Med of Tenn.*] is in line with this Court's previous determination that a private action under the MSPA

fails as a matter of law where Medicare has not paid any claims." *Id. at* *3. The district court continued, "the primary reason for allowing private causes of action is to aid Medicare in collecting payments that it has actually made" and "there exists a consensus amongst courts to have addressed the issue that the overall purpose of the MSPA is to protect the fiscal integrity of the Medicare program and that the purpose of the private cause of action is to facilitate the recovery of conditional payments made by Medicare." *Id.* (citation omitted). In granting the motion to dismiss, the district court concluded: "The Court is persuaded that to sustain a private cause of action under the MSPA, the complaint must allege that payment was made by Medicare. There is no such allegation in the complaint at hand. Accordingly, Plaintiff's claim under the MSPA fails." *Id.* Applying the same reasoning and logic, this Court can reach the same conclusion.

In addition to the lack of any allegation that Medicare has stepped in to pay claims that the WinCo Plan should have paid, which by itself is fatal to Count One, the Complaint fails to allege facts to support that the Plan has impermissibly differentiated the benefits provided between individuals having ESRD and other individuals. Under the MSPA, a group health plan may not "differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of . . . the need for renal dialysis, or in any other matter." 42 U.S.C. § 1395y(b)(1)(C). The Code of Federal Regulations provides examples of actions that constitute impermissible differentiation between individuals with ESRD and others enrolled in a plan:

- Terminating coverage of individuals with ESRD, when there is no basis for such termination unrelated to ESRD (such as failure to pay plan premiums) that would result in termination for individuals who do not have ESRD.

- Imposing on persons who have ESRD, but not on others enrolled in the plan, benefit limitations such as less comprehensive health plan coverage, reductions in benefits, exclusions of benefits, a higher deductible or coinsurance, a longer waiting period, a lower annual or lifetime benefit limit, or more restrictive preexisting illness limitations.

- Charging individuals with ESRD higher premiums.

- Failure to cover routine maintenance dialysis or kidney transplants, when a plan covers other dialysis services or other organ transplants.

42 C.F.R. § 411.161(b). The Plan terms regarding dialysis treatment are simple. Section 12.10 of the Plan requires a participant's provider to contact the dialysis administrator, Ethicare, prior to treatment and enter into an agreement regarding payment (and that if such contact is not made, payments will be limited to the usual and customary rate as defined by the Plan). Declaration of Nikki Hyer Ex. A, WinCo Holdings, Inc. Employee Benefit Plan, at 42; *see also* Section 11.9.9 at 33.

The Complaint does not allege that the WinCo Plan terminated coverage for individuals with ESRD. In fact, it pleads just the opposite and alleges that WinCo continues to provide coverage for ESRD, albeit at a lower reimbursement rate. Moreover, the Complaint does not allege that the WinCo Plan offers less comprehensive coverage to Plan beneficiaries who have ESRD or that the WinCo Plan somehow limits the available coverage to those with ESRD. The Complaint also does not allege that WinCo Plan participants with ESRD are being charged higher premiums. Finally, the Complaint does not allege that the WinCo Plan fails to cover services for kidney dialysis, but covers other services for other bodily organs. Simply put, the Complaint fails to allege any unlawful differentiation under the MSPA and should be dismissed for this additional reason.

DaVita's Complaint boils down to its dissatisfaction with being reimbursed at a lower rate for dialysis services as of January 1, 2017. However, under the MSPA, a plan is not prohibited from limiting covered utilization of a particular service as long as the limitation applies uniformly to all plan enrollees. 42 C.F.R. § 411.161(c). The MSPA regulations regarding payment to providers specifically state that "taking into account" or "differentiating" means "pay[ing] providers and suppliers less for services furnished to a Medicare beneficiary than for the same services furnished to an enrollee who is not entitled to Medicare." 42 C.F.R. §§ 411.108(a)(8), 411.161(b)(2)(iv) . This would prohibit, for example, plans from "paying 80 percent of the Medicare rate for renal dialysis on behalf of a plan enrollee who has ESRD and the usual, reasonable and customary charge for renal dialysis on behalf of an enrollee who does not have ESRD . . . ." 42 C.F.R. § 411.161(b)(2)(iv). Finally, the comments to the Final MSPA Regulations further state:

> The Medicare law does not prohibit [large group health plans] from engaging in cost-avoidance practices and from imposing cost-avoidance provisions such as waiting periods and pre-existing condition exclusions, provided that such practices and provisions apply equally to all enrollees and potential enrollees and do not have the effect of treating individuals entitled to Medicare on the basis of disability who have [large group health plan] coverage by virtue of current employment status differently from similarly situated individuals.

60 FED. REG. 45344-01 (Aug. 31, 1995).

The change that was made effective January 1, 2017, applies uniformly to all WinCo Plan beneficiaries. There is no allegation in the Complaint that the WinCo Plan singled out a particular beneficiary or that the change to the Plan created two classes of beneficiaries with ESRD. The WinCo Plan is not prohibited by law from taking steps to reduce its costs. There is no allegation that WinCo is paying providers and suppliers *less* for services furnished to a

47568.0004.11538085.3

Medicare beneficiary than for the same services furnished to an enrollee who is not entitled to Medicare. Accordingly, the Complaint fails to state a claim for relief under the MSPA and Count One should be dismissed.

**C.      DaVita Fails to State a Claim for Injunctive Relief and Equitable Relief Under ERISA (Count Two).**

DaVita asserts entitlement to equitable relief pursuant to 29 U.S.C. § 1132(a)(3) for alleged violations of the MSPA (discussed above) and 29 U.S.C. § 1182(a)(1).

**1.      Allegation as to MSPA.**

As discussed above, there has been no violation of MSPA. Notwithstanding, equitable relief under 29 U.S.C. § 1132(a)(3) is limited to violations of ERISA and/or ERISA plan terms. There is no remedy available for violations of other laws, such as MSPA. The ERISA statute reads in pertinent part as follows:

> (a)      Persons empowered to bring a civil action. A civil action may be brought—
>
> …
>
> (3)      by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;….

29 U.S.C. § 1132(a)(3) . Accordingly, there is no remedy for violations of MSPA in this statute.

**2.      Allegation as to ERISA.**

DaVita asserts a violation of 29 U.S.C. § 1182(a)(1), which generally prevents plans from establishing rules of eligibility that prevent enrollment based on a health status factor, such as one's health status or medical condition. First, this has not happened here given the facts as alleged; that is, there is no allegation that eligibility has been denied based on a health factor or

47568.0004.11538085.3

medical condition. In fact, DaVita alleges that the subject individuals are enrolled (and receiving benefits). Second, DaVita fails to recognize paragraph (2) of the statute, which provides that paragraph (1) shall not be construed to require a plan to provide particular benefits or to prevent a plan "from establishing limitations or restrictions on the amount, level, extent, or nature of the benefits or coverage for similarly situated individuals enrolled in the plan or coverage." 29 U.S.C. § 1182(a)(2) .

DaVita's cited example from the regulations is not applicable to the facts of this case as alleged. *See* Compl. ¶ 89 (Dkt. 1). In the example, an *individual* is targeted. Additionally, the example states that the facts suggest that the plan change at issue there was directed at such individual. Here, as alleged, the Plan made (allegedly) "sweeping changes" by contracting with another network. Accordingly, there was no rule of eligibility established aimed at any "individual" as discussed in the statute and in the example cited by DaVita. Additionally, the changes to the Plan are supported by the second part of the statute given that the Plan made changes that establish limitations relative to "similarly situated" individuals. 29 U.S.C. § 1182(a).

The regulations further exemplify the point about singling out an individual:

A group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, may not establish any rule for eligibility (including continued eligibility) of any individual to enroll for benefits under the terms of the plan or group health insurance coverage that discriminates based on any health factor that relates to *that individual* or a dependent of *that individual*.

29 C.F.R. § 2590.702(b)(1)(i) (emphasis added). The regulations go on to describe how a plan is permitted to provide different levels of coverages to groups of similarly situated individuals:

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 16

A plan may limit or exclude benefits in relation to a specific disease or condition, limit or exclude benefits for certain types of treatments or drugs, or limit or exclude benefits based on a determination of whether the benefits are experimental or not medically necessary, but only if the benefit limitation or exclusion applies uniformly to all similarly situated individuals and is not directed at individual participants or beneficiaries based on any health factor of the participants or beneficiaries. In addition, a plan or issuer may require the satisfaction of a deductible, copayment, coinsurance, or other cost-sharing requirement in order to obtain a benefit if the limit or cost-sharing requirement applies uniformly to all similarly situated individuals and is not directed at individual participants or beneficiaries based on any health factor of the participants or beneficiaries.

29 C.F.R. § 2590.702(b)(2)(i)(B).

Here, as with other Plan benefits, there are certain parameters associated with Plan participants receiving dialysis treatment. Those parameters apply uniformly to all similarly situated individuals (in fact, they apply uniformly to all Plan participants). Examples from the regulation that are akin to the facts as alleged read as follows:

Example 1. (i) Facts. A group health plan applies a $10,000 annual limit on a specific covered benefit that is not an essential health benefit to each participant or beneficiary covered under the plan. The limit is not directed at individual participants or beneficiaries.

(ii) Conclusion. In this Example 1, the limit does not violate this paragraph (b)(2)(i) because coverage of the specific, non-essential health benefit up to $10,000 is available uniformly to each participant and beneficiary under the plan and because the limit is applied uniformly to all participants and beneficiaries and is not directed at individual participants or beneficiaries.

…

Example 4. (i) Facts. A group health plan has a $2,000 lifetime limit for the treatment of temporomandibular joint syndrome (TMJ). The limit is applied uniformly to all similarly situated individuals and is not directed at individual participants or beneficiaries.

(ii) Conclusion. In this Example 4, the limit does not violate this paragraph (b)(2)(i) because $2,000 of benefits for the treatment of TMJ are available uniformly to all similarly situated individuals and a plan may limit benefits covered in relation to a specific disease or condition if the limit applies uniformly

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 17

> to all similarly situated individuals and is not directed at individual participants or
> beneficiaries. (However, applying a lifetime limit on TMJ may violate §2590.715-
> 2711, if TMJ coverage is an essential health benefit, depending on the essential
> health benefits benchmark plan as defined in 45 CFR 156.20. This example does
> not address whether the plan provision is permissible under any other applicable
> law, including PHS Act section 2711 or the Americans with Disabilities Act.)

29 C.F.R. § 2590.702(b)(2)(i)(D) .

The preamble to the interim final rules is also instructive. In discussing the balance to be

struck in regards to discriminating against particular individuals, yet allowing plans to impose

uniform design restrictions relative to a group of similarly situated individuals, the House of

Representatives Conference Report is quoted, reading as follows:

> It is the intent of the conferees that a plan cannot knowingly be designed to
> exclude individuals and their dependents on the basis of health status. However,
> generally applicable terms of the plan may have a disparate impact on individual
> enrollees. For example, a plan may exclude all coverage of a specific condition, or
> may include a lifetime cap on all benefits, or a lifetime cap on specific benefits.
> Although individuals with the specific condition would be adversely affected by
> an exclusion of coverage for that condition * * * such plan characteristics would
> be permitted as long as they are not directed at individual sick employees or
> dependents.

66 FED. REG. 1378, 1380 (Jan. 8, 2001).

The authorities cited above expressly permit the Plan's design parameters relative to

dialysis treatment. DaVita's claims for equitable relief under Count Two for violation of 29

U.S.C. § 1182 are misguided and should be dismissed.

**D.      DaVita Fails to Allege Sufficient Facts to State a Claim for Relief for ERISA
         Benefits (Count Three).**

DaVita alleges entitlement to benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Even

assuming DaVita has derivative standing to bring a claim for these benefits, DaVita has

nevertheless failed to plead sufficient facts to support its claims for benefits. In Count Three,

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 18

DaVita broadly alleges that the ERISA beneficiaries are entitled to receive the benefits promised under the terms of the Plan. Compl. ¶ 92 (Dkt. 1). Additionally, DaVita alleges that Defendants, improperly, eliminated in-network coverage for beneficiaries with end-stage renal disease. *Id.* ¶ 93 (Dkt. 1).

DaVita's claim merits a fact intensive inquiry. However, DaVita fails to plead any specific facts in its Complaint to show that any benefits were denied. Rather, the Complaint contains only conclusory statements that beneficiaries are entitled to relief. As there are no real allegations that the beneficiaries were denied anything under the Plan, DaVita has not pled sufficient facts to support a plausible claim for benefits under ERISA.

Aside from not pleading any facts describing the benefits that were allegedly denied, DaVita conspicuously does not even conclusorily allege any claim or appeal denials relative to "Patients 3–6," as they do for "Patients 1 and 2." Finally, there are obviously factual deficiencies associated with the lack of detail in terms of who the participants are, what services were received (or not received), when the benefits were allegedly denied, etc. The factual allegations in this regard are wholly inadequate despite DaVita's asserted privacy concerns. Therefore, Count Three should be dismissed.

## E.     DaVita Has Failed to State a Claim for Equitable Relief (Count Four).

DaVita alleges entitlement to remedies pursuant to the doctrines of surcharge, reformation, and estoppel on account of alleged inadequate disclosures relative to the Plan provisions regarding dialysis treatment parameters. These theories of recovery are not available given the alleged facts.

47568.0004.11538085.3

Under Count Three, DaVita alleges entitlement to benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). To the extent DaVita is able to proceed with those benefit claims, Count Four should be dismissed because DaVita has a direct mechanism to remedy its alleged injuries. *See, e.g., Swensen v. United Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir. 2017).

The Count Four theories are disguised attempts to obtain compensatory damages, which are not available under ERISA. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). Notwithstanding, the theories alleged are inapplicable, as reformation is only available in the event of mistake or fraud. *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014). The Complaint contains no allegation of mistake or fraud. Additionally, the suggestion to reform the Plan is also a suggestion that the Plan design reflect provisions that are convenient for, and desired by, DaVita, as a medical provider. The Plan may be designed in the manner the Plan sponsor desires (consistent with health care reform requirements, etc.). It is not for courts, medical providers, or plan participants to determine what benefits a private plan should offer or the various conditions and/or limits associated with different benefits available under a plan (which includes dialysis benefits).

Estoppel is available in order to require a fiduciary to fulfill its promises. *See Id.* Estoppel requires that: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Id.* (quoting *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812 (9th Cir. 1992)). Further,

> To maintain a federal equitable estoppel claim in the ERISA context, the party asserting estoppel must not only meet the traditional equitable estoppel

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 20

requirements, but must also allege: (1) extraordinary circumstances; (2) "that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect"; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan.

*Id.* at 957 (quoting *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997)).

The factual allegations here do not meet these requirements. There is no allegation to the effect that Defendants intended that the participants rely on mistaken facts. There are no extraordinary circumstances alleged, nor is there any assertion of ambiguous plan terms or assertions relative to conflicting interpretations of the Plan. Finally, "a party cannot maintain a federal equitable estoppel claim in the ERISA context when recovery on the claim would contradict written plan provisions." *Id.* at 956. There is no allegation here that the Plan provisions are not being followed. Here, the allegations are simply that Defendants are following the Plan terms, and that DaVita does not like those Plan terms. Such is not a basis for recovery.

While surcharge has been recognized as an available avenue of relief, the availability and scope of surcharge as a remedy in the ERISA context is an evolving concept. Notwithstanding, at a minimum, recovery by way of surcharge requires a fiduciary breach and resulting loss. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011); *see also Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012). Again, the overall allegation here seems to be that Plan design changes were made, and that DaVita, as a medical provider, is not happy with those changes. It is not clear how those facts constitute a fiduciary breach requiring make whole relief to the Plan participants. That is, there is no allegation of a specific duty that was breached. Accordingly, Count Four should be dismissed.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 21

**F.      DaVita Fails to State a Claim for Negligent Misrepresentation, Promissory Estoppel, and Quantum Meruit Under State Law (Count Five).**

DaVita alleges entitlement to remedies for negligent misrepresentation, promissory estoppel, and quantum meruit under state law causes of action. Compl. ¶¶ 103-109 (Dkt. 1). ERISA broadly preempts state law causes of action with few exceptions that are not present in this case. 29 U.S.C. § 1144(a); *see also Aetna Health v. Davila*, 542 U.S. 200, 124 S. Ct. 2488, 159 L.Ed.2d 312 (2004). The allegations in the Complaint undoubtedly relate to an employee benefit plan and come under ERISA's remedial scheme; as such, the state law causes of action must be dismissed.

Even so, DaVita cannot maintain an action for negligent misrepresentation, as the Idaho Supreme Court has stated "except in the narrow confines of a professional relationship involving an accountant, the tort of negligent misrepresentation is not recognized in Idaho." *Duffin v. Idaho Crop Imp. Ass'n*, 126 Idaho 1002, 1010, 895 P.2d 1195, 1203 (1995). As there is no professional relationship involving an accountant in this case, DaVita cannot maintain an action for negligent misrepresentation under Idaho law.

Similarly, DaVita's claims for promissory estoppel and quantum meruit also fail. The elements required to support a claim for promissory estoppel are: "(1) one party's reliance on a promise creates a substantial economic detriment, (2) the reliance was or should have been foreseeable, and (3) the reliance was reasonable and justified." *Grover v. Wadsworth*, 147 Idaho 60, 64, 205 P.3d 1196, 1200 (2009). The doctrine of quantum meruit permits recovery, on the basis of an implied promise to pay, of the reasonable value of the services rendered or the materials provided. *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 191, 108 P.3d

332, 338 (2005) (citing *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 132 Idaho 754, 767, 979 P.2d 627, 640 (1999).

Here, there are no allegations that meet these requirements. Defendants have the right to design and amend the Plan, subject of course to any controlling health care reform requirements or other regulations. There is no allegation that Defendants intended that DaVita rely on mistaken facts or promises in the Plan provisions as amended. DaVita's allegations are, in essence, that the Plan was amended, and DaVita is dissatisfied with being reimbursed at a lower rate for dialysis services as of January 1, 2017. Without facts to support the allegations of reliance or some other implied contract contrary to the terms of the Plan, dissatisfaction with reimbursement rates does not amount to promissory estoppel or quantum meruit. Accordingly, Count Five should be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court dismiss DaVita's Complaint in its entirety with prejudice. Additionally, Defendants request costs and fees in defending this matter, as well as attorneys' fees under 29 U.S.C. § 1132(g).

DATED THIS 7th day of December, 2018.

HAWLEY TROXELL ENNIS & HAWLEY LLP


By: */s/ Tyler J. Anderson*
    Tyler J. Anderson, ISB No. 6632
    Attorneys for Defendants

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 23

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of December, 2018, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jay Gustavsen                                    gus@davisoncopple.com
*Attorney for DaVita*

Peter K. Stris (*pro hac vice*)                  peter.stris@strismaher.com
*Attorney for DaVita*

Brendan S. Maher (*pro hac vice*)                brendan.maher@strismaher.com
*Attorney for DaVita*

Rachana A. Pathak (*pro hac vice*)               radha.pathak@strismaher.com
*Attorney for DaVita*

John Stokes (*pro hac vice*)                     john.stokes@strismaher.com
*Attorney for DaVita*

*/s/ Tyler J. Anderson*
Tyler J. Anderson

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 24