UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STAR DIALYSIS, LLC; ORDUST DIALYSIS, LLC; ROUTT DIALYSIS, LLC; PANTHER DIALYSIS, LLC; DAVITA INC., | Case No. 1:18-cv-00482-CWD **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | |
| v. | |
| WINCO FOODS EMPLOYEE BENEFIT PLAN; WINCO FOODS, LLC; and WINCO HOLDINGS, INC., | |
| Defendants. | |

**INTRODUCTION**

In this action for violations of the Employee Retirement Income Security Act of 1974 (ERISA) and the Medicare as Secondary Payer Act (MSPA), along with related state law claims, Defendants WinCo Foods Employee Benefit Plan, WinCo Foods, LLC, and WinCo Holdings, Inc. (collectively, "WinCo"), move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Plaintiffs oppose the motion. For the reasons set forth below, the motion will be granted in part and denied in part.[1]

---

[1] The parties consented to the jurisdiction of a magistrate judge to hear and decide all matters in this case. (Dkt. 37.)

## BACKGROUND[2]

### 1. Allegations and Factual Background

Plaintiffs Star Dialysis, LLC, Ordust Dialysis, LLC, Routt Dialysis, LLC, Panther Dialysis, LLC, and DaVita, Inc. (collectively, "DaVita") are dialysis treatment providers. Compl. ¶ 1, ¶¶ 14-18. (Dkt. 1.) WinCo Foods, LLC, a subsidiary of WinCo Holdings, Inc., is a Delaware limited liability company with its principal place of business in Boise, Idaho. WinCo Foods operates supermarkets in nine western states. *Id.* ¶¶ 19-20. WinCo Holdings is the sponsor and plan administrator of the WinCo Foods Employee Benefit Plan ("Plan"), which provides medical and health benefits to WinCo employees. *Id.* ¶¶ 19-23. The Plan covers over ten thousand current or former WinCo employees and their family members. *Id.* ¶ 40.

DaVita provides dialysis treatment to beneficiaries of the Plan who suffer from end-stage renal disease ("ESRD"). *Id.* ¶ 1. ESRD is another term for kidney failure, and is the last stage of chronic kidney disease. *Id.* ¶ 24. Dialysis is a procedure that substitutes for many of the normal functions of the kidneys, such as removing waste products that the body produces, and allows patients with ESRD to survive. *Id.* ¶ 25.

Until December 31, 2016, WinCo paid DaVita an in-network, or contracted, rate through Blue Cross of Idaho Health Service, Inc., ("Blue Cross"), the Plan's contract administrator, which rate was "significantly lower than the usual and customary rates DaVita charges" for dialysis. *Id.* ¶ 1. As of January 1, 2017, WinCo eliminated network

---

[2] For purposes of the motion, all of the allegations in the Complaint are accepted as true.

coverage and dramatically reduced reimbursement rates for dialysis by hiring EthiCare Advisors, Inc., as its contract administrator for dialysis patients, including patients with ESRD. *Id.* ¶ 2. (*See also* Dkt. 20-3 at 5.)[3]

According to DaVita, WinCo's elimination of in-network coverage violates the MSPA, which allocates payment responsibilities between Medicare and private payors. *Id.* ¶¶ 2-3. Before Congress enacted the MSPA, private insurers had an incentive to push ESRD sufferers onto Medicare, because individuals with ESRD are entitled to Medicare regardless of age or financial status. *Id.* ¶ 3. The MSPA reversed this coverage shifting by making "private insurers…the 'primary' payers and Medicare the 'secondary' payer" during an individual's first thirty months of ESRD-based Medicare eligibility. *Id.* ¶ 3 (quoting *Bio-Medical Applications of Tenn. v. Cent. Sts. Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011)). DaVita claims that WinCo's Plan violates this "foundational principle" by eliminating in-network coverage of dialysis, in turn creating an incentive for patients with ESRD to drop out of the WinCo Plan and rely on Medicare, because their Medicare payment obligations will be lower. *Id.* ¶¶ 4 – 8.

The reimbursement rate DaVita is paid for dialysis treatment depends upon whether a patient's insurance is government-sponsored or private, and whether DaVita is in-network or out-of-network. *Id.* ¶¶ 31-39. For government-sponsored plans like Medicare, the Medicare fee schedule is set by the federal government and is generally a

---

[3] Docket 20-3 is a copy of the WinCo Holdings, Inc. Employee Benefit Plan effective January 1, 2017, attached to the Declaration of Nikki Hyer as Exhibit A. Section 20.10 of the Plan is titled, "Dialysis/ESRD," and sets forth the pre-certification requirements for plan participants and beneficiaries requiring dialysis treatment.

**MEMORANDUM DECISION AND ORDER - 3**

"small fraction" of the usual and customary amounts DaVita charges and receives for its services, and is much lower than the rates DaVita has negotiated with third party plan administrators, such as Blue Cross of Idaho. *Id.* ¶¶ 54-55. For private insurance plans, provider reimbursement rates depend upon whether DaVita is "in-network" or "out-of-network" with the plan. *Id.* ¶¶ 32-34. When DaVita is in-network, DaVita is paid a contractually negotiated rate, and beneficiaries receive financial incentives, such as lower copayments, coinsurance amounts, or deductibles. *Id.* ¶ 33. When DaVita is out-of-network, it is generally paid a percentage of the usual and customary rate for services (the "UCR" rate). *Id.* ¶ 34. Beneficiaries who receive care from out-of-network providers may face financial disincentives, such as higher copayments, coinsurance amounts, or deductibles, along with the responsibility to pay any charged amounts not reimbursed by the plan. *Id.* ¶ 34.

The WinCo Plan is a preferred provider organization ("PPO") health plan, meaning it incentivizes Plan participants to select healthcare providers that have contracted with the Plan for discounted rates. *Id.* ¶¶ 32. In-network coverage generally protects beneficiaries from having to pay any charged amounts not reimbursed by the Plan. *Id.* ¶ 38. The WinCo Plan also covers services by out-of-network providers who have not contracted with the Plan. *Id.* ¶ 34. The Plan pays out-of-network providers a percentage of the usual and customary rate for the services rendered, and the beneficiary must pay all charged amounts not paid by the Plan in addition to any co-payment, co-insurance or deductible. *Id.* ¶ 34.

**MEMORANDUM DECISION AND ORDER - 4**

WinCo's Plan relies also on third-party claims administrators such as Blue Cross to determine whether to process claims for benefits under the Plan on an in-network or an out-of-network basis. *Id.* ¶ 35. DaVita contracted with Blue Cross of Idaho and other Blue Cross and Blue Shield companies to provide discounted dialysis treatment to their insureds, and these negotiated rates were substantially lower than the usual and customary rates DaVita charged for its services. *Id.* ¶¶ 36-37. Until December 31, 2016, WinCo Plan beneficiaries had access to DaVita as an in-network provider, and Blue Cross of Idaho processed claims for treatment rendered to Plan beneficiaries on an in-network basis. *Id.* ¶ 36-37. DaVita received the rates it had negotiated with Blue Cross of Idaho and other Blue Cross and Blue Shield companies, which rates were substantially lower than the usual and customary rates DaVita charged for its services. *Id.* ¶ 37. DaVita also did not bill beneficiaries for amounts not paid by the Plan. *Id.* ¶ 37.

On January 1, 2017, WinCo's Plan contracted with EthiCare Advisors, Inc., a company that purports to specialize in "dialysis claim savings." *Id.* ¶ 42. The Plan and its agents advised beneficiaries with ESRD that they no longer had access to the Blue Cross network of dialysis providers, including DaVita, and advised beneficiaries that they must select providers in the EthiCare network. *Id.* ¶ 44. DaVita alleges that this change effectively eliminated in-network coverage for dialysis treatment as of January 1, 2017, because there are no providers included in the EthiCare network. *Id.* ¶¶ 43-45. EthiCare, as the third-party claims administrator for the WinCo Plan with respect to dialysis claims only, processes all dialysis claims on an out-of-network basis. *Id.* ¶ 46. Thus, beginning on January 1, 2017, the third-party claims administrator for the WinCo Plan no longer

processed claims for treatment rendered by DaVita to Plan beneficiaries on an in-network basis, and DaVita was free to bill beneficiaries for amounts not paid by the Plan. *Id.* ¶¶ 46-48. As a result, DaVita alleges that WinCo's arrangement with EthiCare induced ESRD sufferers to move from the WinCo Plan to Medicare as their primary payer. *Id.* ¶ 50.

In addition, DaVita alleges that, since January 1, 2017, the Plan has paid DaVita for treatment rendered to Plan beneficiaries at a Medicare-based rate, which has "nothing to do with" the usual and customary rates for DaVita's services. *Id.* ¶¶ 53-54. DaVita alleges also that the "Medicare-based rate represents a small fraction of the usual and customary amounts DaVita charges and receives for its services," and is also much lower than the rates DaVita previously negotiated with Blue Cross of Idaho and other Blue Cross and Blue Shield companies. *Id.* ¶ 55. Further, DaVita alleges that the WinCo Plan continues to pay out-of-network providers of services other than dialysis at more favorable rates than rates based on Medicare. *Id.* ¶ 56.[4]

The causes of action in the Complaint arise from the dialysis treatment provided by DaVita to six patients who were beneficiaries of the WinCo Plan both before and after January 1, 2017. *Id.* ¶¶ 60 – 65. The allegations regarding the six patients are substantially similar:

---

[4] It is not clear from the Complaint whether the alleged "Medicare-based rate" is equivalent to the Medicare reimbursement rate. DaVita does not explain how the Plan utilized Medicare reimbursement rates for purposes of calculating reimbursement to DaVita or other health care providers.

**MEMORANDUM DECISION AND ORDER - 6**

a.       Prior to treatment,[5] DaVita representatives followed standard procedures

for the intake of patients and the receipt of payment for services rendered, which

procedures included contacting WinCo Plan representatives to verify coverage and

to authorize treatment;

b.       During the course of these communications, and based on past practice,

"the Plan led DaVita to believe it would pay for dialysis" for the six patients at the

contracted rate between DaVita and Blue Cross. DaVita alleges that, with regard

to Patient 1, DaVita was told in March of 2017 specifically that coverage and

benefits "would stay the same."[6]

c.       In connection with receiving treatment, Patients 1 – 6 executed a valid

assignment to DaVita, which:

> gives DaVita the right to be paid directly for any services
> rendered to [Patient], and also entitles DaVita to assert
> [Patient]'s legal rights under ERISA and other applicable law.
> These legal rights include the right to recover benefits, to file
> claims and appeals, to request and obtain information and
> documents relating to the plan, and to bring suit for violations
> of ERISA and other applicable law. The Assignment also
> appointed DaVita as the patient's 'authorized
> representative.'[7]

---

[5] It is not clear from the Complaint whether DaVita representatives followed the same
procedures both before and after January 1, 2017. The Complaint does not reference a date.

[6] It is not clear from the Complaint whether DaVita was specifically informed coverage
and benefits would stay the same for dialysis patients as they were in 2016.

[7] The actual assignment is not attached to the Complaint and does not appear elsewhere
in the record.

**MEMORANDUM DECISION AND ORDER - 7**

d.      After providing treatment to Patients 1 – 6, DaVita sought payment from

the WinCo Plan by submitting the necessary information via a standard form,

which form indicated that DaVita had obtained an assignment from each patient.

e.      In response to the claims submitted by DaVita after January of 2017, the

Plan paid DaVita at a Medicare-based rate that was far less than either its

contracted rate with Blue Cross or its usual and customary rate.

## 2. Causes of Action

DaVita brings suit against WinCo alleging five causes of action.

Count One alleges that the WinCo Plan violates two MSPA provisions: one that

prohibits an insurer from "tak[ing] into account that an individual is entitled to or eligible

for" Medicare based on ESRD; Compl. ¶¶ 71 – 76 (quoting 42 U.S.C. §

1395y(b)(1)(C)(i)); and a second provision that prohibits an insurer from

"differentiat[ing] in the benefits it provides between individuals having end stage renal

disease and other individuals covered by such plan on the basis of . . . the need for renal

dialysis, or in any other manner." Compl. ¶ 77 (quoting 42 U.S.C. § 1395y(b)(1)(C)(ii)).

DaVita claims these violations entitle it to double damages under the MSPA's

enforcement provision, 42 U.S.C. § 1395y(b)(3)(A), both in its own right and as the

beneficiaries' assignee. *Id.* ¶¶ 81 – 85.

Count Two seeks injunctive and other equitable relief under 29 U.S.C. §

1132(a)(3) of ERISA to address allegedly illegal plan terms, including reformation to

conform the Plan to the requirements of federal law, as well as attorney fees under 29

U.S.C. § 1132(g).

**MEMORANDUM DECISION AND ORDER - 8**

Count Three seeks relief under 29 U.S.C. § 1132(a)(1)(B), an ERISA provision allowing recovery of benefits promised under the terms of the Plan, and attorney fees under 29 U.S.C. § 1132(g).

Count Four alleges that WinCo's Plan failed to adequately disclose to beneficiaries that there would be no in-network treatment providers for dialysis, and that payment rates for dialysis would be significantly lower than for all other care. *Id.* ¶ 99. DaVita argues that ERISA entitles misled beneficiaries and their assignees to recover under theories of surcharge, reformation, and estoppel. *Id.* ¶ 101.

Count Five alleges claims under Idaho state law for negligent misrepresentation, promissory estoppel, and quantum meruit. *Id.* ¶¶ 103 – 108. DaVita claims it is entitled to recover damages in its own right as a healthcare provider. *Id.* ¶ 109.

WinCo moves to dismiss DaVita's complaint in its entirety. (Dkt. 20.) WinCo argues that: (1) DaVita does not have standing to bring ERISA claims on its own behalf (re: Counts Two, Three, and Four); (2) DaVita lacks derivative standing to bring ERISA claims because the Plan contains an anti-assignment provision (re: Counts Two, Three and Four); (3) the alleged bases of recovery under Counts Two, Four, and Five for equitable relief reach beyond the recovery of benefits; (4) DaVita has not alleged any actual expenses paid by Medicare, as required to state a claim under the MSPA, and DaVita has in fact been paid for services (Count One); (5) DaVita has not alleged discrimination between Plan members as required to state a claim under the MSPA, because there are no facts to support the allegation that the Plan impermissibly differentiated between the benefits provided individuals with ESRD and other individuals

**MEMORANDUM DECISION AND ORDER - 9**

requiring dialysis; (Count One); (6) DaVita fails to state a claim for injunctive relief

under ERISA (Count Two); (7) DaVita does not allege sufficient facts to state a claim for

denial of benefits under ERISA (Count Three); (8) DaVita fails to state a claim for breach

of fiduciary duty under ERISA (Count Four); and (9) DaVita's claims under state law

should be dismissed because ERISA preempts them, and they are inadequately pled in the

Complaint (Count Five).

## ANALYSIS

### 1.      Legal Standard under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

of the claim showing that the pleader is entitled to relief," to "give the defendant fair

notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6)

motion to dismiss "does not need detailed factual allegations," it must set forth "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability

requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a

defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "Dismissal under [Fed. R. Civ. P.] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008). The Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc*., 573 F.3d 728, 737 (9th Cir. 2009); *Morningstar Holding Corp. v. G2, LLC*, No. CV-10-439-BLW, 2011 WL 864300, at *3 & n.4 (D. Idaho Mar. 10, 2011). The Court of Appeals for the Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."

**MEMORANDUM DECISION AND ORDER - 11**

*Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv., Inc*., 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

As a general rule, the Court may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). When matters outside the pleading are presented to and not excluded by the Court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed. R. Civ. P. 12(b)(6).

However, the Court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Lee,* 250 F.3d at 688. If the documents are not physically attached to the complaint, they may be considered if the document's "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. *Id.* (quoting *Parrino v. FHP, Inc*., 146 F.3d 699, 705–06 (9th Cir. 1998)).

Here, Defendants submitted a copy of the WinCo Holdings, Inc. Employee Benefit Plan effective January 1, 2017, with other support for thier motion to dismiss. (Dkt. 20-2 Ex. A.) Neither party disputes the document's authenticity, and DaVita's complaint necessarily relies upon the Plan document. Therefore, the Court will consider the Plan document in ruling on DaVita's motion to dismiss under Fed. R. Civ. P. 12(b)(6).

**MEMORANDUM DECISION AND ORDER - 12**

2.     **Count One - Claim Brought Under the MSPA**

   A.     **Statutory Scheme of the MSPA**

Medicare is a federal health insurance program providing health insurance benefits to individuals sixty-five years of age or older, disabled individuals, and individuals with ESRD. 42 U.S.C. §§ 1395 to 1395kkk–1; *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008). Many Medicare recipients may also be covered by private health care plans. *Nat'l Renal Alliance, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 598 F.Supp.2d 1344, 1351 (N. D. Ga. 2009). Until 1981, Medicare provided primary payment for all services to Medicare beneficiaries except for services covered under workers' compensation. *United States v. Blue Cross Blue Shield of Michigan*, 859 F. Supp. 283, 286 (E.D. Mich. 1994); *Stalley*, 517 F.3d at 915.

In 1980, Congress enacted the MSPA to counteract rising health care costs. *See* 42 U.S.C. § 1395y(b); *Stalley*, 517 F.3d at 915.[8] The MSPA makes Medicare insurance secondary to any "primary plan" obligated to pay a Medicare recipient's medical expenses. 42 U.S.C. § 1395y(b)(2)(A). In this manner, Congress sought to reduce federal spending and to protect the financial well-being of the Medicare program. *United States v. Travelers Ins. Co*., 815 F.Supp. 521, 522 (D. Conn. 1992); *Bio-Med. Applications of Ga., Inc. v. City of Dalton, Ga*., 685 F. Supp. 2d 1321, 1328 (N.D. Ga. 2009).

---

[8] The law became effective in 1981. *Bio-Med. Applications of Ga., Inc. v. City of Dalton, Ga*., 685 F. Supp. 2d 1321, 1328 (N.D. Ga. 2009).

42 U.S.C. § 1395y(b)(1)(C) concerns the obligations of private health care plans

when dealing with persons suffering from ESRD. Section 1395y(b)(1)(C) states:

**(C) Individuals with end stage renal disease**

A group health plan (as defined in subparagraph (A)(v))—

>  (i) may not take into account that an individual is entitled to
> or eligible for benefits under this subchapter under section
> 426–115 of this title during the 12–month period which
> begins with the first month in which the individual becomes
> entitled to benefits under part A under the provisions of
> section 426–1 of this title, or, if earlier, the first month in
> which the individual would have been entitled to benefits
> under such part under the provisions of section 426–1 of this
> title if the individual had filed an application for such
> benefits; and

> (ii) may not differentiate in the benefits it provides between
> individuals having end stage renal disease and other
> individuals covered by such plan on the basis of the existence
> of end stage renal disease, the need for renal dialysis, or in
> any other manner….

Essentially, the MSPA forbids a private group health plan from "taking into account" an

individual's ESRD diagnosis, or "differentiating" in the benefits offered to that

individual, during the thirty months[9] after that individual becomes eligible, and applies

for, Medicare. *City of Dalton*, 685 F.Supp.2d at 1329. If an individual with ESRD is

covered by both Medicare and a private health plan, Medicare acts as a "secondary"

---

[9] The regulations have not been updated to reflect that the coordination of benefits period
was extended to 30 months effective August 5, 1997. *See* Medicare Secondary Payer (MSP)
Manual, Chapter 2—MSP Provisions, Section 20 (available at
https://www.cms.gov/Regulations-and-
Guidance/Guidance/Manuals/Downloads/msp105c02.pdf) (last visited July 9, 2019).

payer during the thirty-month coordination of benefits period. *See* 42 C.F.R. §

411.162(a).

The regulations implementing the MSPA describe in more detail what "taking into

account," and "differentiating" in terms of benefits, means under the statute. 42 C.F.R. §

411.108(a)(1) and (3) read:

> (a) Examples of actions that constitute "taking into account".
> Actions by GHPs or LGHPs that constitute taking into
> account that an individual is entitled to Medicare on the basis
> of ESRD, age, or disability (or eligible on the basis of ESRD)
> include, but are not limited to, the following:
>
>> (1) Failure to pay primary benefits as required
>> by subparts F, G, and H of this part 411.
>> ***
>> (3) Terminating coverage because the
>> individual has become entitled to Medicare,
>> except as permitted under COBRA continuation
>> coverage provisions....

42 C.F.R. § 411.161 also discusses the terms "differentiation" and "taking into

account."

> (a) Taking into account—
>
>> (1) Basic rule. A GHP may not take into account that
>> an individual is eligible for or entitled to Medicare
>> benefits on the basis of ESRD during the coordination
>> period specified in § 411.162(b) and (c). Examples of
>> actions that constitute taking into account Medicare
>> entitlement are listed in § 411.108(a).
> ***
>
> (b) Nondifferentiation.
>
>> (1) A GHP may not differentiate in the benefits it
>> provides between individuals who have ESRD and
>> others enrolled in the plan, on the basis of the

**MEMORANDUM DECISION AND ORDER - 15**

existence of ESRD, or the need for renal dialysis, or in any other manner.

(2) GHP actions that constitute differentiation in plan benefits (and that may also constitute "taking into account" Medicare eligibility or entitlement) include, but are not limited to the following:

(i) Terminating coverage of individuals with ESRD, when there is no basis for such termination unrelated to ESRD (such as failure to pay plan premiums) that would result in termination for individuals who do not have ESRD.

(ii) Imposing on persons who have ESRD, but not on others enrolled in the plan, benefit limitations such as less comprehensive health plan coverage, reductions in benefits, exclusions of benefits, a higher deductible or coinsurance, a longer waiting period, a lower annual or lifetime benefit limit, or more restrictive preexisting illness limitations.

(iii) Charging individuals with ESRD higher premiums.

(iv) Paying providers and suppliers less for services furnished to individuals who have ESRD than for the same services furnished to those who do not have ESRD, such as paying 80 percent of the Medicare rate for renal dialysis on behalf of a plan enrollee who has ESRD and the usual, reasonable and customary charge for renal dialysis on behalf of an enrollee who does not have ESRD.

(v) Failure to cover routine maintenance dialysis or kidney transplants, when a plan covers other dialysis services or other organ transplants.

42 C.F.R. § 411.161(a), (b). *See also* 42 C.F.R. § 411.102(a)(1) (prohibiting group health plans from "tak[ing] into account ESRD-based Medicare eligibility," or "differentiat[ing] in the benefits," provided to persons with ESRD).

**MEMORANDUM DECISION AND ORDER - 16**

While Medicare can be a "secondary" payer in certain situations, when the "primary" payer is not expected to pay within 120 days, Medicare may make a conditional payment with the expectation that the "primary" payer will reimburse Medicare if the primary payer is obliged to do so. *See* 42 C.F.R. § 411.21 (establishing 120 day payment requirement); *see also* 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii) (discussing authority to make conditional payment); *Glover v. Liggett Group, Inc*., 459 F.3d 1304, 1306 (11th Cir. 2006) (same). When an individual has ESRD-based Medicare eligibility and also has private group health plan coverage, Medicare "may make a conditional payment if—(1) The beneficiary, the provider, or the supplier that has accepted assignment files a proper claim under the group health plan and the plan denies the claim in whole or in part...." 42 C.F.R. § 411.165(a)(1). However, if the group health plan fails to make a payment because it contends that it is secondary to Medicare, Medicare will not make a conditional payment. 42 C.F.R. § 411.165(b)(1)(i).

To ensure reimbursement when Medicare makes conditional payments on behalf of a group health plan, the MSPA authorizes the United States to sue a delinquent primary payer for double damages. 42 U.S.C. § 1395y(b)(2)(B)(iii); *see also United States v. Baxter Int'l, Inc*., 345 F.3d 866, 875 (11th Cir. 2003) ("Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer."). In other words, when Medicare makes a conditional payment on behalf of a beneficiary, the primary plan must reimburse the Trust Fund. 42 U.S.C. § 1395y(b)(2)(B)(ii). The MSPA also subrogates the United States to a beneficiary's right

to pursue the primary plan, *id*. § 1395y(b)(2)(B)(iv), and provides the United States with an independent right to recover double damages from a responsible entity which refuses to reimburse the Trust Fund, *id*. § 1395y(b)(2)(B)(iii). *See Parra v. PacifiCare of Arizona, Inc*., 715 F.3d 1146, 1152 (9th Cir. 2013) (setting forth statutory scheme of the MSPA).

In 1986, the Medicare Act was further amended to include "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A)). The private cause of action allows Medicare beneficiaries and healthcare providers to recover medical expenses from primary plans. *See, e.g., Bio–Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 279 (6th Cir. 2011), *cert. dismissed*, 565 U.S. 1152 (2012) (noting that the private cause of action provides an "incentive for healthcare providers to bring lawsuits to vindicate Medicare's interests"); *Woods v. Empire Health Choice, Inc*., 574 F.3d 92, 98 (2d Cir. 2009) ("[T]he MSP[A] allows a private party...to bring suit in the party's own name to remedy the wrong done to it—namely the failure of a primary plan to make the payments required of it...."); *Parra*, 715 F.3d at 1152.

If a private party's action for damages under the MSPA is successful, the "United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." 42 U.S.C. §

**MEMORANDUM DECISION AND ORDER - 18**

1395y(b)(2)(B)(iv); *Frazer v. CNA Ins. Co.*, 374 F.Supp.2d 1067, 1077 (N.D. Ala. 2005)

("The statute provides that a private litigant who recovers a reimbursement for claims

paid by Medicare and which have been denied by an insured defendant is required to turn

over the amounts of such claim to the government."). The statute provides for double

damages to allow Medicare to recoup any conditional payments, and to offer a reward to

the private litigant bringing the action. *Frazer*, 374 F.Supp.2d at 1080; *accord Stalley v.

Catholic Health Initiative*s, 509 F.3d 517, 525 (8th Cir. 2007) ("[W]ith the private right

of action and the double damages, the beneficiary can pay back the government for its

outlay and still have money left over to reward him for his efforts."); *Bio-Med.

Applications of Georgia, Inc.*, 685 F. Supp. 2d at 1330–31; *Parra*, 715 F.3d at 1154-55

("The Private Cause of Action was intended to allow private parties to vindicate wrongs

occasioned by the failure of primary plans to make payments.").

**B.    Analysis**

DaVita argues that the Court should not apply the reasoning in *Bio–Med.

Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656

F.3d 277, 279 (6th Cir. 2011), and *Nat'l Renal Alliance v. Blue Cross*, 598 F.Supp.2d

1344 (N.D. Ga. 2009), upon which Defendants' rely: both authorities hold that a private

cause of action fails unless Medicare has actually made a payment to or on behalf of the

ESRD patient. DaVita argues a key distinction exists here, because WinCo has

completely eliminated in-network coverage, whereas in *Bio-Med.* and *Nat'l Renal*, the

plans had left in place their systems of in-network coverage and had reduced payments to

only out-of-network providers. Response at 15. (Dkt. 31 at 15.) DaVita argues it may

seek redress for violations of the MSPA under either the Act's private right of action provision, or under ERISA.

WinCo argues the Plan does not violate the MSPA, because the facts alleged in the Complaint fail to demonstrate Medicare advanced medical expenses to Plan beneficiaries, and because WinCo did not terminate coverage for any Plan participant or beneficiary because of Medicare eligibility. WinCo contends the reasoning adopted by the courts in *Bio-Med.* and *Nat'l Renal* are equally applicable here.

The Court finds Count One is subject to dismissal because DaVita has failed to adequately plead an MSPA claim. There are no facts alleged indicating that Medicare paid any claims on behalf of Patients 1 – 6. In reaching this conclusion, the Court finds no justification to depart from the reasoning the courts applied in *Bio-Med.* and *Nat'l Renal*, as adopted by the court in *DaVita, Inc. v. Amy's Kitchen, Inc.*, No. 18-cv-06975-JST, 2019 WL 1509186 (N. Dist. Cal. April 5, 2019), and other district and appellate courts examining the question.

Courts considering whether a private party has stated a claim under the MSPA consistently agree that Medicare must have paid claims on behalf of patients before a private cause of action is triggered. For instance, the District Court for the Northern District of Georgia in *Bio-Med. Applications of Ga., Inc. v. City of Dalton*, 685 F.Supp.2d 1321 (N.D. Ga. 2009), found that the language of the statute, the legislative history, and the cases interpreting the MSPA supported the conclusion that Medicare must pay a claim on behalf of a patient before a private right of action can be invoked. The court noted that "courts considering the provision have generally agreed that the apparent

purpose of the statute is to help the government recover conditional payments from insurers or other primary payers." 685 F.Supp. 2d at 1331 (citing *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 525 (8th Cir. 2007); *United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 21-22 (1st Cir. 2007); *Manning v. Utils. Mut. Ins. Co., Inc.*, 254 F.3d 387, 396-97 & n.8 (2nd Cir. 2001); *Harris Corp. v. Humana Health Ins. Co.*, 253 F.3d 598, 606 (11th Cir. 2001)).

The court in *City of Dalton* also noted that the inclusion of the MSPA private right of action in The Omnibus Budget Reconciliation Act of 1986 was intended to reduce government spending. *Id.* The private right of action served a purpose --- it was intended to motivate a beneficiary to "take arms against a recalcitrant insurer because Medicare may have already paid the expenses," by providing a double recovery; and by allowing the double damages, the beneficiary could pay back the government and have money left over as a reward for his or her efforts. *Id.* at 1332 (citing *Stalley* at 524-25.)

The *City of Dalton* court observed that the consensus among courts is that a MSPA double damages claim "may be maintained only where Medicare has, in fact, paid claims that a primary insurer should have, but refused, to pay." *Id.* at 1332 (citing *Leggette et. Al. v. B.V. Hedrick Gravel & Sand Co., et. al.*, Case no. 3:04-cv-00530-CH, 2006 WL 6809606 *11 (W.D.N.C. May 24, 2006); *Manning*, 254 F.3d at 391-92; *Woods v. Empire Health Choice, Inc.*, No. 05–CV–0577 (DLI)(LB), 2007 WL 2406876, at *2 (E.D.N.Y. Aug. 20, 2007); *Glover v. Philip Morris USA*, 380 F.Supp.2d 1279, 1282 (M.D. Fla. 2005)).

**MEMORANDUM DECISION AND ORDER - 21**

The Sixth Circuit in *Bio-Med. Applications of Tennessee, Inc.* arrived at the same conclusion in its 2011 decision, reasoning that a primary plan is liable under a private cause of action when it "causes Medicare to step in and (temporarily) foot the bill." 656 F.3d at 287. *See also Hapeville Dialysis Ctr., LLC v. City of Atlanta, Ga.*, No. 1:12-cv-0055-SCJ, 2013 WL 831635 *3 (N.D. Ga. Mar. 5, 2013) (noting that "there exists a consensus amongst the courts to have addressed the issue that the overall purpose of the MSPA is to protect the fiscal integrity of the Medicare program, and that the purpose of the private cause of action is to facilitate the recovery of conditional payments made by Medicare."). The Ninth Circuit is in accord, holding in *Parra* that there was no cause of action under the MSPA, because there, the plan had not "failed to provide for payment." *Parra v. PacifiCare of Arizona, Inc*., 715 F.3d at 1155 (9th Cir. 2013).

The District Court for the Northern District of Georgia in *Nat'l Renal*, applying the Sixth Circuit's decision in *Bio-Med*, found that an insurer's decision to lower reimbursement rates failed to implicate the MSPA, because there was "no impact on Medicare." 598 F.Supp.2d at 1355. Absent payment by Medicare, the plaintiffs in *Nat'l Renal* failed to state a claim for which relief could be granted under the MSPA. *Id.*

DaVita argues that the Court should not follow the Sixth Circuit's reasoning in *Bio-Med.* and the cases discussed above, because nothing in the statute indicates that Medicare first must have made a payment before an action may be sustained under the MSPA. DaVita argues the private cause of action should apply to situations where the individual is not enrolled in Medicare, because Medicare will not pay under such circumstances. However, the authorities referenced above consistently emphasize that the

**MEMORANDUM DECISION AND ORDER - 22**

primary reason for allowing a private cause of action is to "aid Medicare in collecting payments that it has actually made," and which should have been paid by the primary payer but were denied. *City of Dalton*, 685 F.Supp. 2d at 1333. Other than urging the Court to reject *Bio-Med.* and *Nat'l Renal*, DaVita has not cited the Court to a case that specifically holds a private party can maintain an action in the absence of actual payment by Medicare.

DaVita's argument that the private cause of action should enable a provider to sue for damages in the absence of payment by Medicare unravels when the Court considers damages. The MSPA allows for a "double recovery," ostensibly to reward the private party for recouping monies Medicare paid on behalf of an individual. Here, DaVita's theory of damages is the difference between its UCR and the reimbursement it received from the Plan. Compl. ¶ 83. "This calculation, however, has no impact on Medicare. The damages provided for in the statute simply do not fit the situation here. Congress could not have intended for a service provider to receive double recovery when half of the recovery is supposed to go to Medicare." *Nat'l Renal Alliance, LLC*, 598 F.Supp.2d at 1355.

The Court's conclusion is also consistent with the regulations, quoted and cited above. "Taking into account" an individual's diagnosis with ESRD includes actions such as "failure to pay primary benefits," or "terminating coverage." 42 C.F.R. § 411.108(a). While WinCo may have reduced the dollar amount of its payments to dialysis providers, and, according to the Complaint, effectively eliminated favorable in-network coverage,

the facts alleged in the Complaint do not establish WinCo failed to pay benefits or terminated coverage for Plan beneficiaries with ESRD.

In sum, the facts alleged in the Complaint do not indicate Medicare made any payments, conditional or otherwise, on behalf of Patients 1 – 6. Rather, the Complaint alleges that the Plan paid DaVita (via EthiCare) after January 1, 2017, for dialysis services provided to Patients 1 – 6. Compl. ¶¶ 60(h); 61(h); 62(h); 63(h); 64(h); and 65(h). Under the above legal authorities, and in the absence of any payments by Medicare caused by a refusal of the Plan to pay,[10] DaVita cannot maintain a private cause of action against WinCo under the MSPA. Further, given the absence of payment by Medicare, it is unnecessary for the Court to address DaVita's other arguments.[11]

Accordingly, Count One will be dismissed in full, because DaVita has failed to adequately plead an MSPA claim. Moreover, amendment would be futile. DaVita's

---

[10] Under the MSPA, Medicare may have made a conditional payment if the Plan had denied the claims of Patients 1 – 6. *See City of Dalton*, 685 F.Supp.2d at 1330 n.17.

[11] DaVita alleges also that WinCo's Plan violates the provision of the MSPA which prohibits an insurer from "tak[ing] into account that an individual is entitled to or eligible for" Medicare based on ESRD, 42 U.S.C. § 1395y(b)(1)(C)(i); and the provision that prohibits an insurer from "differentiat[ing] in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of…the need for renal dialysis, or in any other manner," 42 U.S.C. § 1395y(b)(1)(C)(ii). DaVita argues that, by eliminating all in-network coverage for Medicare-eligible ESRD patients, WinCo has both taken into account that an individual is entitled to or eligible for Medicare based on ESRD, and differentiated in the benefits it provides ESRD patients and other individuals.

**MEMORANDUM DECISION AND ORDER - 24**

claim, both on behalf of itself and as the beneficiaries' assignee,[12] is precluded because it is undisputed Medicare has not made any payments to or on behalf of Patients 1 – 6.

### 3.      ERISA Claims – Counts Two, Three, and Four

WinCo raises several arguments in support of its motion to dismiss Counts Two, Three, and Four. First, WinCo argues DaVita lacks "standing" to bring claims under ERISA, because it is not a beneficiary as defined by ERISA. Next, WinCo argues that the scope of the assignments does not encompass an assignment of all rights granted to beneficiaries under ERISA, and is limited to the assignment of the right to payment. Third, WinCo argues that the assignment provision DaVita relies upon is unenforceable because the Plan has an anti-assignment clause. Last, WinCo contends that DaVita's claims brought pursuant to 29 U.S.C. § 1132(a)(3) are simply disguised attempts to obtain unpaid benefits under 29 U.S.C. § 1132(a)(1)(B), and therefore may not be maintained. Upon considering the above arguments, they are best understood in the context of statutory standing to assert claims on DaVita's own behalf, or as derivative claims asserted on behalf of DaVita's patients, who are beneficiaries of the WinCo Plan. Each theory will be discussed in turn.

---

[12] Here, the Court diverges from the analysis in *DaVita v. Amy's Kitchen*. There, the court found DaVita's claim brought under the MSPA as the patient's assignee failed due to the lack of a valid assignment to bring an MSPA cause of action. 2019 WL 1509186, at *8. The court did not address the pre-requisite to an MSPA cause of action in the first instance – payment by Medicare. The Court finds that, whether the patients' assignments here were valid or not, the claim under the MSPA fails as a matter of law absent payment by Medicare. An assignment would still require DaVita to establish the elements of a claim under the MSPA, which the Court concludes it has not. Nonetheless, the Court will discuss the assignment clause later in this opinion in connection with DaVita's ERISA claims.

**MEMORANDUM DECISION AND ORDER - 25**

### A.   Statutory Standing

In Counts Two, Three, and Four, DaVita appears to assert claims on its own behalf under ERISA. In Count Two, DaVita asserts it is entitled to either an injunction or equitable relief pursuant to 29 U.S.C. § 1132(a)(3); ERISA § 502(a)(3). In Count Three, DaVita claims it is entitled to benefits promised under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); ERISA § 502(a)(1)(B). And, in Count Four, DaVita appears to assert it is entitled to further equitable relief in the form of surcharge, reformation, and estoppel pursuant to 29 U.S.C. § 1132(a)(3); ERISA § 502(a)(3). DaVita argues also that it may seek redress for violations of the MSPA via ERISA. (Dkt. 31 at 15).[13]

ERISA's civil enforcement provisions specify which categories of individuals and entities may enforce each of the statute's protections. The relevant provisions follow:

> A civil action may be brought--
> (1) by a participant or beneficiary--
>     (A) for the relief provided for in subsection (c) of this section, or
>     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

---

[13] Although the Court finds, as explained above, that DaVita has not asserted facts to establish a violation of the MSPA, the Court includes DaVita's claim for violation of the MSPA asserted via ERISA for completeness.

**MEMORANDUM DECISION AND ORDER - 26**

29 U.S.C. § 1132(a)(1), (3); ERISA § 502(a). *See DB Healthcare, LLC v. Blue Cross Blue Shield of Az. Inc*., 852 F.3d 868, 873 (9th Cir. 2017).

To the extent DaVita maintains it is a beneficiary for purposes of ERISA § 502(a), and may bring suit directly under that statute, the United States Court of Appeals for the Ninth Circuit has held that health care providers are not "beneficiaries within the meaning of ERISA's enforcement provisions." *DB Healthcare, LLC*, 852 F.3d at 874 (citing *Spinedex Physical Therapy USA Inc. v. United Healthcare of Az., Inc*., 770 F.3d 1282, 1289 (9th Cir. 2004), *cert denied, United Healthcare of Ariz. v. Spinedex Physical Therapy USA, Inc.,* —— U.S. ——, 136 S.Ct. 317 (2015). *See also DaVita v. Amy's Kitchen*, 2019 WL 1509186 at *4. The Ninth Circuit explained that the statutory usage of the word "benefit" in ERISA does not include a fee owed in exchange for a service rendered, but rather encompasses the broader concept of health benefits when addressing employer provided medical benefits under a plan governed by ERISA. *DB Healthcare*, 852 F.3d at 874 (citing 29 U.S.C. § 1002(1)), which defines an employee welfare benefit plan, in part, as any plan, fund or program maintained by an employer that "was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise…medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment….").

Thus, to the extent DaVita is asserting ERISA claims on its own behalf, such claims are subject to dismissal with prejudice. Health care providers are not beneficiaries

for ERISA purposes, even if providers are contractually authorized to receive direct payment for medical services rendered to plan beneficiaries. *DB Healthcare*, 852 F.3d at 875.

### B.      Derivative Authority

The Court turns next to the question whether DaVita has derivative authority to sue for reimbursement of benefits, and also for other alleged ERISA violations, by virtue of the assignments from Patients 1 – 6.

The general rule is that health care providers do not enjoy derivative authority to bring claims under ERISA. *DB Healthcare, LLC*, 852 F.3d at 876. However, "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider." *Misic v. Bldg. Serv. Emps. Health and Welfare Tr.*, 789 F.2d 1374, 1377 (9th Cir. 1986) (per curiam). In *Misic*, a dentist rendered dental services to beneficiaries of an ERISA plan that provided dental benefits of 80 percent of the cost of their dental care. *See id*. at 1376. The beneficiaries assigned their right to reimbursement to the dentist, who in turn billed the plan directly. When the plan did not pay 80 percent of the dentist's bill, the dentist sued to recover the deficiencies in payment. *See id*. The court held that, unlike pension benefits, which may not be assigned to others, *see* 29 U.S.C. § 1056(d), ERISA § 206(d), ERISA does not prohibit the assignment by a beneficiary of his or her right to reimbursement under a health care plan to the health care provider. *See id*. at 1377. The *Misic* court further held that, because a health care provider-assignee stands in the shoes of the beneficiary, such a provider has standing to sue under ERISA § 502(a)(1)(B) to recover benefits due under the plan. *Blue Cross of*

*California v. Anesthesia Care Assocs. Med. Grp., Inc*., 187 F.3d 1045, 1051 (9th Cir. 1999).[14]

Accordingly, *Misic* "affirmed the principle that ERISA preempts the state law claims of a provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan." *The Meadows v. Employers Health Ins*., 47 F.3d 1006, 1008 (9th Cir. 1995). In other words, a health care provider can assert the claims of an ERISA beneficiary under 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B), to recover benefits due under the terms of the plan, provided there is a valid assignment of the right to receive reimbursement. *See Misic*, 789 F.2d at 1377.

In addition, an assignment may encompass other rights under ERISA, provided the assignment expressly indicates that rights to bring suit pursuant to 29 U.S.C. § 1132(a)(1)(3) or other provisions of ERISA are assigned. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc*., 770 F.3d 1282, 1292 (9th Cir. 2014) (holding that assignments signed by plan beneficiaries did not manifest an intent to assign claims to health care providers for breach of fiduciary duty under ERISA); *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, No. CV 14-01480 MMM-AGRX, 2014 WL 6603761, at *10 (C.D. Cal. July 28, 2014) (finding ERISA rights asserted by health care provider under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(1)(A), and 1132(c) were assignable).

---

[14] The court noted that, in *Misic*, the provider had no contractual agreement with the patient's health benefit plan, and sought, as an assignee, the right to recover reimbursement due to his assignor under the terms of the benefit plan. *Blue Cross*, 187 F.3d at 1051.

**MEMORANDUM DECISION AND ORDER - 29**

DaVita asserts each patient executed an assignment of his or her rights to DaVita as follows:

> The Assignment gives DaVita the right to be paid directly for any services rendered to [each patient], and also entitles DaVita to assert [each patient's] legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law.

Compl. ¶¶ 60(e), 61(e), 62(e), 63(e), 64(e), and 65(e). DaVita argues that the assignments (which documents are not in the record)[15] not only provide for the "assignment of benefits," but also grant DaVita the right to assert each patient's legal rights, without limitation, under ERISA, and therefore include the ability to sue for breach of fiduciary duty and other ERISA violations pursuant to 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3).

WinCo relies on the anti-assignment provision in the Plan, which states:

> **21.7.5 Nonassignability of Rights**
> The right of any Participant to receive any reimbursement under the Plan shall not be alienable by the Participant by assignment or any other method, and shall not be subject to the rights of creditors, and any attempt to cause such right to be so subjected shall not be recognized, except to such extent as may be required by law.

(Dkt. 20-3 at 76.) WinCo argues the anti-assignment clause overrides any purported assignment, including the assignment of the right to receive reimbursement for benefits due under the Plan. Alternatively, WinCo argues that the assignments should be narrowly

---

[15] DaVita contends it is not required to attach or quote directly from the assignments, so long as it plausibly alleges the assignments provide derivative standing. Resp. at 15. (Dkt. 31 at 21.)

construed and limited to transfer only the right to payment for services rendered to plan beneficiaries.

The Court will first discuss DaVita's argument that the assignments encompass its claims for injunctive and equitable relief asserted under 29 U.S.C. § 1132(a)(3), as set forth in Counts Two and Four of the Complaint. Next, the Court will review whether the anti-assignment clause precludes DaVita's claim for benefits under 29 U.S.C. § 1132(a)(1)(B), as asserted in Count Three of the Complaint and, if not, whether DaVita has set forth factual allegations sufficient to state a cause of action under § 1132(a)(1)(B).

### i. Scope of the Assignment

Section 1132(a)(3) provides a "catch all" cause of action for injunctive or "other appropriate equitable relief" to redress, enjoin, or enforce ERISA or the provisions of an applicable plan. *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (describing § 1132(a)(3) as a "safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy"). DaVita argues that the reference in the assignment clause to pursuit of "legal rights under ERISA," together with the reference to the right to "bring suit for violations of ERISA," creates an assignment that goes beyond the right to claim payment of benefits. In contrast, WinCo argues that the assignment is directed at the pursuit of unpaid benefits, and should be narrowly construed. (Dkt. 20-1 at 9.)

The Court must first look to the language of an ERISA assignment to determine its scope. *Spinedex*, 770 F.3d at 1291. The Court's task in interpreting the scope of an assignment is to enforce the intent of the parties. *In re WellPoint, Inc. Out-of-Network*

**MEMORANDUM DECISION AND ORDER - 31**

*UCR Rates Litig.*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012). The Court must therefore consider whether the claims DaVita advances in Counts Two and Four are within the scope of the assignment upon which it relies. *See DB Healthcare*, 852 F.3d at 877 (examining first the language and context of the authorizations).

Three cases inform the Court's analysis and provide a comparison for the language of the assignment clause here. Two decisions by the Ninth Circuit encompass one end of the spectrum, wherein the court found the language of the assignment clauses before it was narrow. For example, in *Spinedex*, the health care provider argued the assignment clause allowed it to bring claims for breach of fiduciary duty under ERISA. There, the assignment form provided, in part, "[T]his is a direct assignment of my rights and benefits under this policy." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014).

Despite the broad language used, the court looked to the context of the assignment. The court found the assignment was limited by language elsewhere within the same clause, which limited Spinedex to representing patients in proceedings that may be necessary to pursue payment of benefits under their health insurance plans. *Id.* at 1288, 1292. Accordingly, the court held that "the entirety of the Assignment indicates that patients intended to assign to Spinedex only their rights to bring suit for payment of benefits," meaning the provider had "no right to bring claims for breach of fiduciary duty" under 29 U.S.C. § 1132(a)(3). *Id.* at 1292.

Similarly, in *DB Healthcare*, the court found the assignment was limited to the assignment of the right to payment under ERISA. *DB Healthcare, LLC v. Blue Cross*

**MEMORANDUM DECISION AND ORDER - 32**

*Blue Shield of Arizona, Inc.*, 852 F.3d 868, 876 (9th Cir. 2017)*. There, the assignment

read, "I Hereby Authorize My Insurance Benefits to Be Paid Directly to the Physician."

*Id.* at 876. The court relied upon the fact that the authorization was located on a form

listing types of medical services, and the assignment referred only to direct payment of

insurance benefits to physicians, without reference to claims for declaratory or injunctive

relief. *Id.* at 876-77. Accordingly, the court found that the language and context indicated

that plan beneficiaries "intended to assign, at most, the right to payment of benefits and

the associated right to sue for non-payment." *Id.* at 877. The court had "no doubt that

[the] authorization [did] not encompass the [provider]'s claims for declaratory and

injunctive relief…or for breach of fiduciary duty." *Id.* Thus, the court held the provider's

claims for declaratory and injunctive relief under  29 U.S.C. § 1132(a)(3) were not within

the scope of the assignment. *Id.*

On the other end of the spectrum, the District Court for the Central District of

California, in *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, found an assignment

clause sufficiently broad to encompass the health care provider's breach of fiduciary duty

claims. No. CV 14-01480 MMM AGRX, 2014 WL 6603761, at *11 (C.D. Cal. July 28,

2014). In *Care First*, the assignment was much more specific, stating:

> The undersigned hereby appoints and designates Care First
> Surgical Center as my duly authorized representative, and
> assigns my ERISA rights and plan benefits as described
> below. This assignment is effective during any legal or
> administrative process relating to any claim submitted on my
> behalf, which shall include, but is not limited to ... any legal
> process relating to a claim submitted on my behalf for health
> insurance benefits; and/or [ ] any request for disclosure of
> documents and/or materials relating to a claim submitted on

**MEMORANDUM DECISION AND ORDER - 33**

> my behalf.... I hereby assign my right to assert any and all
> causes of action for judicial review to Care First Surgical
> Center.... My assignee may 'stand in my shoes', [sic] as that
> phrase is understood under assignment law. I intend for my
> personal standing under ERISA's disclosure and civil
> enforcement procedures under 29 U.S.C. §§ 1024 and 1132 to
> be hereby transferred to my assignee, so that it may seek
> judicial review of denied claims and/or disclosure under 29
> U.S.C. § 1132(a)(1)(B), 29 U.S.C. § 1132(a)(1)(A), and/or 29
> C.F.R. 2560.503–1. This assignment specifically includes an
> assignments of my rights to seek relief as a claimant under 29
> U.S.C. § 1132(c) and my rights to seek attorney fees under 29
> U.S.C. § 1132(g).... The assignment of benefits and ERISA
> rights by me is complete: I retain no interest in the benefits
> and/or rights due to me under these claims for medical care
> and/or facility fees.

2014 WL 6603761, at *11. The court found this language sufficiently broad and explicit

to confer upon Care First the right to bring claims not only for the recovery of benefits,

but also to seek penalties for nondisclosure and assert that the plan administrator had

breached its fiduciary duty under ERISA. *Id.* at *12.

DaVita attempts to distinguish its assignment language from that in *DB*

*Healthcare*. However, despite DaVita's assertion that the scope of the assignment

encompasses its equitable claims asserted under 29 U.S.C. § 1132(a)(3), the Court finds

the language of the assignment as set forth in the Complaint is more akin to that in

*Spinedex* and *DB Healthcare*, and not so specific and broad as the assignment in *Care*

*First.* Here, the assignment begins with language giving DaVita the right to "be paid

directly for any services rendered...." (Dkt. 31 at 21.) It explains that the assignment

"entitles DaVita to assert [patient's] legal rights under ERISA," which rights "include the

**MEMORANDUM DECISION AND ORDER - 34**

right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA….” *Id.*

Although the assignment grants DaVita legal rights under ERISA, including the right to bring suit for violations of ERISA, the context and other language used informs the Court’s interpretation of the scope of the assignment. *See Spinedex*, 770 F.3d at 1291; *DB Healthcare*, 852 F.3d at 877; *Amy’s Kitchen*, 2019 WL 1509186, at *7. The assignment specifically references the right to be paid directly for services rendered. The language granting the right to be paid directly is coupled with the right to assert a claim under ERISA, implying the right is limited to recovery of benefits only.

Similarly, the description of legal rights transferred includes “the right to recover benefits,” “file claims and appeals,” and “request and obtain information.” In other words, the right to bring suit for an ERISA violation is directly tied to, or limited by, the preceding description of the rights transferred, which contains an express limitation to that of recovery of benefits. Nowhere does the assignment language manifest an intent to transfer the right to sue for breach of fiduciary duty or for other equitable relief. *See Spinedex*, 770 F.3d at 1292 (“the [a]ssignment nowhere indicates that, by executing the assignment, patients were assigning to [DaVita] rights to bring claims for breach of fiduciary duty”, citing *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) (“[I]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person….”)).

Both the context of and language used in the assignment suggests, at most, that Patients 1 – 6  transferred to DaVita the right to bring suit for payment of benefits

**MEMORANDUM DECISION AND ORDER - 35**

pursuant to 29 U.S.C. § 1132(a)(1)(B), and not for any cause of action under ERISA whatsoever. *See Amy's Kitchen*, 2019 WL 1509186 at *7. Further, the entire emphasis of the Complaint is to obtain benefits DaVita contends are due under the terms of the Plan.

Consistent with the persuasive Ninth Circuit authority discussed above, the Court finds here the scope of the Assignment incorporated by reference in the Complaint is limited to the right to assert claims for payment of benefits under 29 U.S.C. § 1132(a)(1)(B). DaVita may not assert rights it does not have, and the pleading defect therefore cannot be cured. Accordingly, the Court will grant WinCo's motion to dismiss Counts Two and Four of the Complaint.

### ii.   Derivative Claim for Benefits (Count Three)

Having concluded that sufficient facts are alleged to find the scope of the assignment includes a right to assert a claim for benefits under ERISA, the Court turns next to Count Three of the Complaint, which states a derivative claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

DaVita asserts in Count Three that, absent a contractual agreement establishing a negotiated, in-network rate, DaVita is entitled to be paid its usual and customary rate, and that payment of less than its usual and customary rate constitutes an adverse benefit determination. Compl. ¶¶ 67, 94. DaVita contends also that WinCo was not authorized to "eliminate in-network coverage" for ESRD patients. Compl. ¶ 93. In response, WinCo argues that DaVita has failed to plead sufficient facts to support its claim for benefits, because beneficiaries were not denied anything under the Plan. In other words, Plan

beneficiaries received benefits as set forth in the Plan, because DaVita received reimbursement at out-of-network, or non-contract, rates.

Alternatively, WinCo argues that the Plan beneficiary's right to receive reimbursement was prohibited from assignment because of the Plan's anti-assignment clause. In response, DaVita argues the anti-assignment clause is ambiguous, and therefore does not bar the assignment of claims.[16] Additionally, DaVita asserts that EthiCare continued to pay DaVita, albeit at an "inappropriately low rate," and WinCo is thereby estopped from relying upon, or has waived, the anti-assignment clause. Response at 18; (Dkt. 31 at 24); Compl. ¶ 60.

The Court finds the Complaint plausibly alleges that WinCo waived or is estopped to assert its right to rely on the anti-assignment provision. *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 575 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012); *Spinedex*, 770 F.3d at 1296. The general rule in the Ninth Circuit and others is that a "court will not allow an ERISA plan administrator to assert a reason for denial of benefits that it had not given during the administrative process." *Spinedex*, 770 F.3d at 1296 (citing *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719-20 (9th Cir. 2012)). In *Hermann*, the court held that the plan was "estopped to assert the anti-assignment clause…because

---

[16] DaVita appears to contradict itself, asserting that, "[a]t most, it bars assignment of claims that seek 'reimbursement under the plan, i.e., a § 1132(a)(1)(B) claim for recovery of benefits under the terms of the plan." (Dkt. 31 at 23.)

of its protracted failure to assert the clause when [the provider] requested payment pursuant to a clear and unambiguous assignment." *Hermann*, 959 F.2d at 574.

DaVita alleges that it submitted claim forms on behalf of Patients 1 – 6 seeking reimbursement from the Plan, all of which contained an assignment provision. Compl. ¶¶ 61-65. DaVita asserts also that the claim forms submitted to the WinCo Plan after January 1, 2017, did not differ in any way from the claim forms it previously submitted to the WinCo Plan prior to January 1, 2017. DaVita alleges that, after January 1, 2017, EthiCare has continued to authorize payment to be sent directly to DaVita. Thus, DaVita has alleged sufficient facts to support its claim that WinCo was aware DaVita was acting as its patients' assignee, and waived any objection to the assignment because EthiCare (and Blue Cross before it) continued to pay DaVita directly for dialysis services.

Despite concluding that there are sufficient facts alleged to support DaVita's assertion that WinCo waived its right to enforce the anti-assignment provision, the Court finds DaVita fails to state a claim under 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B), for three reasons. First, DaVita has not alleged a distinct injury to Patients 1 – 6 to confer derivative standing. Second, DaVita has not alleged it received an adverse benefit determination within the meaning of 29 U.S.C. § 1132(a)(1)(B). And third, DaVita has not set forth sufficient facts to show that a plan term was violated. Each reason will be discussed below.

### 1. *No Distinct Injury*

DaVita's claim under 29 U.S.C. § 1132(a)(1)(B) is derivative of that of WinCo Plan beneficiaries, and therefore DaVita has standing to assert its claim if the plan

**MEMORANDUM DECISION AND ORDER - 38**

beneficiaries who assigned the right to payment suffered an injury in fact. *See Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Texas, Inc*., 16 F. Supp. 3d 767, 777 (S.D. Tex. 2014) (explaining that there must be an injury to health care plan beneficiaries for the provider to assert a derivative claim under § 1132(a)(1)(B)); *In re WellPoint, Inc*., 903 F.Supp.3d 880, 899 (C.D. Cal. 2012) (dismissing provider plaintiffs' claims when the alleged only their own injury). Here, however, DaVita has alleged only that it has suffered injury as a result of WinCo's (or EthiCare's) failure to pay for the services provided at the rate DaVita contends it was owed. Compl. ¶¶ 67, 94. DaVita has not explained how Patients 1 – 6 were harmed, as it has failed to allege any distinct injury to the WinCo Plan beneficiaries, such as an obligation to pay part of DaVita's billed charges that exceeded the reimbursement amount determined by WinCo.[17] Absent facts that would establish an injury to the Plan beneficiaries, DaVita does not have derivative standing to assert the WinCo Plan beneficiaries' claims. *Mid-Town Surgical Ctr.,* 16 F.Supp.3d at 777. Accordingly, DaVita has not alleged facts sufficient to show it has standing to pursue its claim under 29 U.S.C. § 1132(a)(1)(B). *Id.*

## 2.  *No Adverse Benefit Determination*

Next, DaVita has not alleged Winco's Plan beneficiaries suffered an adverse benefit determination. Section 29 U.S.C. § 1132(a)(1)(B) allows beneficiaries of the plan to "recover benefits due to him under the terms of his plan." This section necessarily

---

[17] Rather, DaVita hints at the prospect of injury to Patients 1 – 6, explaining that out of network coverage results in "higher co-payments, coinsurance amounts, and/or deductibles, along with the responsibility to pay any charged amounts not paid for by the Plan," but does not provide specifics for Patients 1 – 6.

requires an adverse benefit determination, which is defined in 20 C.F.R. § 2560.503-1(m)(4). This regulation defines an adverse benefit determination as "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part)" for a claimed benefit. Here, the Plan expressly provided benefits to beneficiaries who received dialysis treatment. (Dkt. 20-3 at 26-27, defining covered services as including kidney dialysis.)

The Plan indicates that in-network providers would be paid "100% of the rate negotiated by the Contract Administrator," which, as of January 1, 2017, was EthiCare and not Blue Cross. (Dkt. 20-3 at 27.) If a negotiated rate was not applicable, and the provider was therefore considered out-of-network, the Plan would pay "100% of the UCR for reasonable claims." *Id.* Elsewhere, the Plan states that, if the provider has not entered into an agreement with EthiCare, "payment for all Dialysis services and supplies will be strictly limited to the UCR rate as defined by the Plan…." (Dkt. 20-3 at 44.) The Plan defines the UCR rate as "[t]he amount paid for a service in a geographic area based on what Providers in the area charge for the same or similar medical service. The UCR amount is sometimes used to determine the allowed amount." (Dkt. 20-3 at 108.)

Under the terms of the Plan, the claimed benefit was dialysis treatment, which was reimbursed at a "usual and customary rate for reasonable claims." Patients 1 – 6 received dialysis treatment from DaVita, and the WinCo Plan paid DaVita at the rate defined by the operative Plan terms at the time the patients received treatment. Compl. ¶¶ 60-65. In other words, Patients 1 – 6 still had health benefits coverage for services that they obtained from out-of-network health providers such as DaVita under the terms of the

Plan after January 1, 2017. Accordingly, WinCo has not set forth factual allegations establishing an adverse benefit determination within the meaning of ERISA. *Amy's Kitchen,* 2019 WL 1509186, at *8.

### 3. *No Identified Plan Term Was Violated*

Nor has DaVita set forth sufficient facts demonstrating that a plan term was violated. There are insufficient factual allegations to support DaVita's claim that WinCo's payments violated the terms of the Plan. DaVita's general allegation that its UCR was more than what it was paid is not sufficient to demonstrate that WinCo breached the Plan terms. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc*., 995 F. Supp. 2d 587, 601 (N.D. Tex. 2014) (general allegations that the defendant failed to make payments as required under the terms of the ERISA plan deemed insufficient); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig*., 865 F. Supp. 2d 1002, 1021 (C.D. Cal. 2011) (dismissing provider claims alleging out of network benefits were reimbursed based on extremely low and unrepresentative Medicare rates); *compare Houston Home Dialysis, LP v. Blue Cross & Blue Shield of Texas, a Div. of Health Care Serv. Corp*., No. CV H-17-2095, 2018 WL 2562692, at *7 (S.D. Tex. June 4, 2018) (finding provider adequately alleged that Blue Cross violated the plan terms by setting forth the applicable plan formula for payment, and alleging facts showing it was paid less than the plan formula); *Gilmour for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc*., No. SA-17-CV-00510-FB, 2018 WL 1887296, at *8 (W.D. Tex. Jan. 19, 2018) (finding the complaint contained extensive factual

allegations in support of its claim that health insurer failed to reimburse provider at the UCR for out-of-network providers).[18]

Here, the WinCo Plan disclosed that reimbursement rates for out-of-network services (non-contracting providers) differed from reimbursement rates for in-network services, and may be capped according to the plan administrator's determination of the UCR and what it considered to be a reasonable claim. In other words, the Court fails to see how reimbursing an out-of-network provider in accordance with the terms of the Plan amounts to a violation of 29 U.S.C. § 1132(a)(1)(B).

Nonetheless, the Court will allow DaVita the opportunity to amend its Complaint with respect to Count Three, based upon the holdings in *Gilmour* and *Houston Home Dialysis*, provided DaVita can set forth sufficient factual allegations in support of its claim.[19] The Court cannot say at this stage that DaVita cannot cure the deficiencies in the Complaint.

However, DaVita must set forth factual allegations explaining how Patients 1 – 6 were harmed, or otherwise did not receive benefits as defined by the Plan. Here, the Plan

---

[18] For example, in *Gilmour*, the provider gave numerous examples of the under compensation of claims submitted on behalf of specific patients; set forth facts establishing the methodology the provider used in other cases to determine the allowable amount of a given claim; alleged that none of these methodologies were used correctly in determining the allowed amounts for the claims at issue; and demonstrated that the plan administrator made payments to the provider by applying 140% of the Medicare allowable instead of the reasonable and customary rate applicable. *Gilmour,* 2018 WL 1887296 at *8.

[19] In this respect, the Court disagrees with the holding of *Amy's Kitchen*. There, the court dismissed DaVita's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) with prejudice, despite facts similar to the matter before the Court.

**MEMORANDUM DECISION AND ORDER - 42**

states that the UCR is the "amount paid for a service in a geographic area based on what Providers in the area charge for the same or similar medical service. The UCR amount is sometimes used to determine the allowed amount." (Dkt. 20-3 at 108.) But, DaVita has pled only that it was not paid "the usual and customary rates for DaVita's services," and that DaVita was paid a "small fraction of the usual and customary amounts DaVita charges and receives for its services." The factual allegations concern DaVita's usual and customary rates, but do not contain factual allegations regarding the usual and customary rates paid for the same or similar medical services in the geographical area. Thus, while DaVita states a cognizable legal theory, it has not set forth facts alleging a violation of the Plan terms.[20]

---

[20] WinCo argued also that DaVita had not adequately plead exhaustion of administrative remedies. In ERISA actions, plaintiffs must exhaust available administrative remedies before suing in federal court. *Diaz v. United Agr. Employee Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995). However, a court may, in its discretion, excuse the exhaustion requirement when resort to administrative remedies would be futile, or the remedy inadequate. *Perrino v. S. Bell. Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000). Here, the Court finds DaVita alleged sufficient facts in the Complaint to satisfy the exhaustion requirement at this stage. The allegations regarding Patients 1 – 6 are essentially similar. With regard to Patient 1, DaVita alleges that it appealed the Plan's payment decision to Blue Cross, and in response, EthiCare denied the appeal and informed DaVita it was entitled to file suit under ERISA. Compl. ¶ 60(j). A similar appeal followed for Patient 2's claims. Compl. ¶ 61(i), (j). At this stage, the Court finds the facts as plead plausibly establish exhaustion, and suggest that, had DaVita appealed the Plan's payment decisions for Patients 3 – 6, the outcome would have been the same. "Even if [DaVita] had not satisfied a particular administrative grievance process, [its] efforts gave [WinCo] 'an opportunity to understand [DaVita's] grievance and consider any response it might want to make.'" *Nat'l Renal*, 598 F.Supp.2d at 1356; *see also Urology Ctr. Of Ga., LLC, v. Blue Cross Blue Shield Health Plan of Ga., Inc.*, No. 5:09-cv-161(CAR), 2010 WL 797204 *3-4 (M.D. Ga. Mar. 4, 2010) (requiring "clear and positive" showing of futility in the complaint).

The Court will therefore dismiss this claim without prejudice, although it will allow DaVita an opportunity to set forth additional factual allegations in support of its claim.

### C.    Alternative Reasons for Dismissal of Counts Two and Four

In addition to the Court's determination that the patient assignments to DaVita do not encompass the right to assert equitable claims under ERISA, there are alternative bases upon which the Court may grant WinCo's motion to dismiss Counts Two and Four.

First, WinCo asserts that DaVita has a direct mechanism to remedy its alleged injuries (a suit under ERISA § 502(a)(1)(B) for benefits), and therefore is not entitled to assert also claims for equitable relief as set forth in Count Four. Mem. at 20. (Dkt. 20-1 at 25.) The Court agrees. Count Four seeks the remedies of surcharge, reformation, or estoppel to "compensate out-of-network providers like DaVita at their usual and customary rates." Compl. ¶ 101. This is the same relief sought in Count Three, in which DaVita claims it is entitled under the Plan to be "paid its usual and customary rates" as an out-of-network provider. Compl. ¶ 94. DaVita is not alleging an injury separate and distinct from the payment of benefits promised by the Plan. Although a plaintiff is entitled to plead alternative theories of recovery, *Moyle v. Liberty Mut. Retirement Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016), "[e]quitable relief under ERISA is normally unavailable 'where Congress elsewhere provided adequate relief for a beneficiary's injury,'" *Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir. 2017). *See also Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S. Ct. 1065, 1079, 134 L. Ed. 2d 130 (1996) ("where Congress elsewhere provided adequate relief for a beneficiary's

injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate).

In other words, the relief sought under each alternative claim must be distinct. *See Sliwinski v. Aetna Life Ins. Co*., No. 17-CV-01528-RM-MEH, 2017 WL 4616599, at \*7 (D. Colo. Oct. 16, 2017), report and recommendation adopted, No. 17-CV-01528-RM-MEH, 2018 WL 4697310 (D. Colo. Mar. 2, 2018) (discussing when a beneficiary may plead in the alternative under ERISA); *Houston Home Dialysis, LP v. Blue Cross & Blue Shield of Texas, a Div. of Health Care Serv. Corp*., No. CV H-17-2095, 2018 WL 2562692, at \*5 (S.D. Tex. June 4, 2018). Here, DaVita's Complaint makes clear that the only damages it seeks is the difference between what it was actually paid and its usual and customary rates. Compl. ¶¶ 94, 101. DaVita cannot pursue both a claim under 29 U.S.C. § 1132(a)(1)(B) and a claim for the same relief under 29 U.S.C. § 1132(a)(3).

Count Four asserts also a failure to disclose plan terms with regard to network providers and reimbursement rates. Compl. ¶ 98. However, the Complaint alleges that, "[b]eginning on or about January 1, 2017, the Plan and its agents advised beneficiaries with ESRD that they no longer had access to the Blue Cross network of dialysis providers," and that EthiCare became the third-party claims administrator for the WinCo Plan. Compl. ¶¶ 44, 45. Turning to the Plan itself, it advises beneficiaries regarding the difference between participating and non-participating providers, and that providers contract independently with the Contract Administrator. (Dkt. 20-3 at 22, 24.) The Plan next informs beneficiaries that, if they need kidney dialysis, they must contact the Contract Administrator and receive prior authorization before receiving treatment. (Dkt.

20-3 at 27.) The Plan also identifies the Contract Administrator. (Dkt. 20-3 at 5, 44.) The Plan does not set forth the actual rates it pays providers, and this is true for all covered services.

ERISA does not mandate that plan disclosures include UCR data or amounts. *See In re WellPoint, Inc.*, 903 F.Supp.2d 880, 920-21 (C.D. Cal. 2012 (citing 29 U.S.C. § 1022(a), and explaining that the summary plan description need not include UCR data). Participants are informed they must contact the contract administrator and health care provider for information concerning coverage. In other words, the Plan's summary plan description is not required to include a disclosure of all network/contracting providers, or to disclose rates it pays out. DaVita has therefore not stated a cognizable claim under 29 U.S.C. § 1132(a)(3) based upon the alleged failure to disclose.

Turning to Count Two, DaVita alleges that the plan terms are "illegal" because the Plan improperly targets individuals based on their health condition, in violation of 29 U.S.C. § 1182(a)(1). DaVita explains that, by eliminating in-network coverage and cutting the payout rate for out-of-network coverage only for people with ESRD, the Plan discriminatorily reduces benefits. However, the Plan simply changed contract administrators. The same participating/nonparticipating provider structure remained for all patients requiring dialysis and other covered services.

For these additional reasons, the Court finds Counts Two and Four are subject to dismissal for failure to state a claim.

4. **State Law Claims – Count Five**

DaVita asserts state law claims for negligent misrepresentation, promissory estoppel, and quantum meruit. WinCo argues federal preemption. In response, DaVita concedes the negligent misrepresentation theory should be dismissed, but argues that, to the extent it cannot recover under ERISA, its other state law claims may stand. Response at 22. (Dkt. 31 at 28.)[21] The Court agrees with DaVita.

Section 1132(a) allows an ERISA plan's participants and beneficiaries to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The United States Supreme Court has read § 1132 to preempt "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement scheme." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). "[T]o the extent that the claims at issue are governed by ERISA, ERISA preempts [the plaintiff's] state-law claims." *Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 Fed. App'x 731, 737 (5th Cir. 2015).

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court established a two-part test for determining when state law claims are completely preempted by ERISA § 502(a). Under *Davila*, state law claims are completely preempted

---

[21] Neither party addressed the Court's ability to decline to exercise jurisdiction over state law claims when a district court dismisses federal claims. 28 U.S.C. § 1367(c)(3). In *Amy's Kitchen*, the court declined to exercise supplemental jurisdiction upon determining that all of DaVita's MSPA and ERISA claims were subject to dismissal with prejudice. 2019 WL 1509186 at *10. Here, however, the Court is permitting amendment of the Complaint with regard to Count Three. Accordingly, the Court will address the parties' arguments with respect to Count Five.

when (1) an individual, at some point in time, could have brought the claim under §
502(a); and (2) there is no other legal duty independent of ERISA or the plan terms that
are implicated by the defendant's actions. *Id*. at 210.

The two-prong test of *Davila* is in the conjunctive. *Marin Gen. Hosp. v. Modesto
& Empire Traction Co*., 581 F.3d 941, 947 (9th Cir. 2009). ERISA § 502(a)(1)(B)
preempts a state-law cause of action only if both prongs of the test are satisfied. *Id.* In the
case before the Court, neither is satisfied.

First, DaVita could not have brought its state-law claim under § 502(a)(1)(B) of
ERISA, because it is not seeking additional amounts based upon the Plan language.
DaVita's promissory estoppel and quantum meruit claims relate to the alleged
representation by WinCo Plan representatives that, after January 1, 2017, coverage and
benefits for dialysis patients would remain the same, and that the Plan would pay for
dialysis treatment at the contracted rate DaVita had with Blue Cross. Compl. ¶¶ 60-65.
DaVita claims, however, that the rate it was paid after EthiCare became the Contract
Administrator was less than its contract rate with Blue Cross. *Id.*

Second, DaVita seeks to remedy violations of legal duties that are independent of
ERISA. These claims arise out of communications in which WinCo Plan representatives
allegedly agreed to pay the contracted rate between DaVita and Blue Cross, even though
DaVita was no longer considered a contracting, or in-network, provider after January 1,
2017. DaVita is seeking additional payment, purportedly in an amount representing the

**MEMORANDUM DECISION AND ORDER - 48**

difference between the rate it was promised and the rate it was paid.[22] To the extent that DaVita alleges it is owed additional amounts based upon the alleged oral representations by WinCo Plan representatives, such claims are not preempted by ERISA because they are not claims for benefits promised under the terms of an ERISA plan. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009).

DaVita's state law claims are, therefore, not completely preempted by ERISA § 502(a)(1)(B), and the allegations in the Complaint set forth sufficient facts stating a plausible claim for relief.

## CONCLUSION

WinCo's motion to dismiss will be granted in part and denied in part. The motion will be granted with prejudice as to DaVita's ERISA claims for equitable relief in Counts Two and Four, and its MSPA claim for double damages in Count One, because leave to amend would be futile. The motion will be granted without prejudice and with leave to amend as to DaVita's claim asserted in Count Three. The motion will be denied as to DaVita's claim in Count Five. However, unless Plaintiffs address the factual deficiencies as plead in support of Count Three, Count Five may be subject to dismissal pursuant to 28 U.S.C. § 1367(c)(3).

---

[22] To the extent DaVita asserts it should be paid the difference between the UCR rate and the rate it was paid, such a claim would be preempted by ERISA because it would be based upon the amount allegedly owed under the patient's ERISA governed plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009).

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)  Defendants' Motion to Dismiss (Dkt. 20) is **GRANTED IN PART and DENIED IN PART**, with leave to amend as set forth in this memorandum decision. Plaintiffs must file their amended complaint within twenty-one days of the date of this Order.

DATED: July 12, 2019

Honorable Candy W. Dale
United States Magistrate Judge