Jay Gustavsen
  gustavsen@davisoncopple.com
Idaho State Bar No. 5293
**DAVISON, COPPLE, COPPLE & COPPLE**
199 N. Capitol Blvd., Ste. 600
Boise, ID 83702
T: (208) 342-3658

Peter K. Stris (*pro hac vice*)
  peter.stris@strismaher.com
Brendan S. Maher (*pro hac vice*)
  brendan.maher@strismaher.com
Rachana A. Pathak (*pro hac vice*)
  radha.pathak@strismaher.com
John Stokes (*pro hac vice*)
  john.stokes@strismaher.com
**STRIS & MAHER LLP**
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

Attorneys for Plaintiffs STAR DIALYSIS, LLC;
ORDUST DIALYSIS, LLC; ROUTT DIALYSIS,
LLC; PANTHER DIALYSIS, LLC; DAVITA
INC.

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STAR DIALYSIS, LLC; ORDUST DIALYSIS, LLC; ROUTT DIALYSIS, LLC; PANTHER DIALYSIS, LLC; DAVITA INC., | Case No. 1:18-cv-00482-CWD |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | |
| WINCO FOODS EMPLOYEE BENEFIT PLAN; WINCO FOODS, LLC; and WINCO HOLDINGS, INC. | |
| Defendants. | |

1.      Plaintiffs Star Dialysis, LLC, Ordust Dialysis, LLC, Routt Dialysis, LLC, Panther Dialysis, LLC, and DaVita Inc. (collectively, "DaVita") have provided life-sustaining dialysis treatment to beneficiaries of Defendant WinCo Foods Employee Benefit Plan ("WinCo Plan" or "Plan") who suffer from end-stage renal disease ("ESRD"). Plan beneficiaries with ESRD historically enjoyed access to the Blue Cross network of providers, the same network that is available to other beneficiaries. And the WinCo Plan for years paid DaVita its contracted rate with Blue Cross.

2.      But as of January 1, 2017, WinCo eliminated network coverage and dramatically reduced reimbursement for dialysis—in a manner that violates the terms of the WinCo Plan. It did so after hiring EthiCare Advisors, Inc. ("EthiCare"), a New Jersey-based company that purports to specialize in "dialysis claim savings." *EthiCare Advisors*, ethicareadvisors.com, *last accessed* July 24, 2019.

3.      The Plan now tells ESRD sufferers that they may obtain in-network treatment from providers in the so-called "EthiCare network." But despite the Plan's promise that such in-network providers will be available, the purported EthiCare network appears to be no network at all: DaVita is not in it, and knows of no dialysis provider who is. Put simply, the WinCo Plan tells beneficiaries that they will have a network of dialysis providers, but EthiCare and WinCo have in fact eliminated network coverage for dialysis, making beneficiaries with ESRD responsible for higher out-of-pocket costs and all uncovered amounts.

4.      In addition to eliminating network coverage, WinCo reduced its reimbursement for out-of-network dialysis treatment in a manner that violates the reimbursement methodology required by the WinCo Plan. The Plan tells beneficiaries that out-of-network dialysis will be reimbursed at the Usual, Customary, and Reasonable (UCR) rate, which the Plan defines as "the

amount paid for a service in a geographic area based on what Providers in the area charge for the same or similar medical service." Plan at 106.

5.      But as of January 1, 2017, the Plan no longer bases its out-of-network reimbursement rates on "what Providers in the area charge for" dialysis. Instead, WinCo now bases its reimbursement rate on the Medicare rate for dialysis treatment. The Medicare rate, however, is not based on "what Providers in the area charge" for dialysis, and it is far lower than that amount. Thus, basing out-of-network dialysis reimbursement on the Medicare rate violates the Plan's own definition of UCR.

6.      WinCo's actions both discourage providers from treating Plan beneficiaries and severely increase the financial exposure of patients. Because WinCo has not created the promised network of dialysis providers, patients are now responsible for all amounts not paid by the Plan. And because WinCo's Medicare-based rate is lower than a proper calculation of UCR as defined by the plan, patients' financial responsibility is even higher than it otherwise would be. WinCo has thus jeopardized the lives and livelihoods of its most vulnerable beneficiaries.

7.      DaVita accordingly seeks relief under federal law (as assignee of multiple Plan beneficiaries) and under state law (in its own right).

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Jurisdiction over the state law claims alleged herein exists under 28 U.S.C. § 1367.

9.      ERISA provides for nationwide service of process. 29 U.S.C. § 1132(e)(2). All Defendants are either residents of the United States or subject to service in the United States. This Court therefore has personal jurisdiction over them.

10.     Venue is proper in this district because all Defendants are residents of Idaho, and a substantial part of the events giving rise to this action occurred in Idaho. 28 U.S.C. § 1391.

## PARTIES

11.     Star Dialysis, LLC is a Delaware limited liability corporation that owns one or more facilities that provided dialysis treatment and care to at least one patient described in this Complaint.  As set forth below, Star Dialysis, LLC sues both in its own right and as an assignee of its patients.

12.     Ordust Dialysis, LLC is a Delaware limited liability corporation that owns one or more facilities that provided dialysis treatment and care to at least one patient described in this Complaint.  As set forth below, Ordust Dialysis, LLC sues both in its own right and as an assignee of its patients.

13.     Routt Dialysis, LLC is a Delaware limited liability corporation that owns one or more facilities that provided dialysis treatment and care to at least one patient described in this Complaint.  As set forth below, Routt Dialysis, LLC sues both in its own right and as an assignee of its patients.

14.     Panther Dialysis, LLC is a Delaware limited liability corporation that owns one or more facilities that provided dialysis treatment and care to at least one patient described in this Complaint.  As set forth below, Panther Dialysis, LLC sues both in its own right and as an assignee of its patients.

15.     DaVita is a Delaware corporation with its principal place of business in Denver, Colorado. It is a leading provider of kidney care in the United States with centers located in 46 states and the District of Columbia, including 14 facilities in Idaho. As set forth below, DaVita sues both in its own right and as an assignee of its patients.

16.     Defendant WinCo Foods, LLC ("WinCo Foods") is a Delaware limited liability company with its principal place of business in Boise, Idaho. It operates supermarkets in Arizona, California, Idaho, Nevada, Oklahoma, Oregon, Texas, Utah, and Washington.

17.     Defendant WinCo Holdings, Inc. ("WinCo Holdings") is an Idaho corporation with its principal place of business in Boise, Idaho. WinCo Foods is a subsidiary of WinCo Holdings (collectively "WinCo").

18.     The WinCo Plan is an "employee welfare benefit plan" and an "employee benefit plan" within the meaning of ERISA. *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" and "welfare plan"); 29 U.S.C. § 1002(3) (defining "employee benefit plan" and "plan"). It is subject to Title I of ERISA. *See* 29 U.S.C. § 1003(a).

19.     WinCo Holdings is the sponsor and the plan administrator of the WinCo Plan. All Defendants and those working at their direction in connection with actions described herein exercised discretionary authority and discretionary control respecting management of the WinCo Plan; exercised authority and control over disposition of the WinCo Plan's assets; had discretionary authority and discretionary responsibility in the administration of the WinCo Plan; and were fiduciaries of the WinCo Plan within the meaning of 29 U.S.C. § 1002(21)(A).

20.     Participation in the WinCo Plan is reserved to eligible WinCo employees, retirees, and their dependents, and the purpose of the Plan is to provide them with medical and health benefits.

## GENERAL ALLEGATIONS

### I.     DaVita Provides Costly, Life-Sustaining Dialysis Treatment.

21.     Kidney failure, also called ESRD, is the last stage of chronic kidney disease. When a patient suffers from ESRD, it means that their kidneys have stopped working well enough for

the patient to survive without dialysis or a kidney transplant.

22.     Dialysis is a procedure used to "substitute" for many of the normal functions of the kidneys, such as removing the waste products that the body produces throughout the day. When these toxins are not removed, they build up in the body and cause serious health complications and ultimately death.

23.     Although hemodialysis is the most common treatment for people with ESRD, it is far from a routine medical procedure. A dialysis machine removes blood from the body, filters it through an artificial kidney, and then returns the cleaned blood. Traditional, in-center dialysis is administered to a patient three times a week for about four hours each session.

24.     ESRD affected nearly 800,000 people in the United States as of 2016, and the number of patients diagnosed with ESRD continues to rise each year. *2018 USRDS annual data report: Epidemiology of kidney disease in the United States*, National Institutes of Health, National Institute of Diabetes and Digestive and Kidney Diseases, Bethesda, MD, 2018, Table B.1. At least 95% of all dialysis treatments are administered to patients with ESRD.

25.     Congress and regulators have recognized that dialysis is special because it is both essential and expensive. For example, Medicare Part B covers routine maintenance dialysis for people with ESRD regardless of their age or financial resources. In 2014, Medicare spent $32.8 billion on services for beneficiaries with ESRD. *Id.*

26.     DaVita is a leading clinical provider of this care in the United States. It treats almost 200,000 patients at over 2,400 centers located in 46 states and the District of Columbia. In 2019, Fortune named DaVita one of the world's most admired companies for the twelfth consecutive year, and DaVita is acknowledged as a clinical leader in both of the Centers for

Medicare & Medicaid Services' quality assessment programs: the Five-Star Rating System and the Quality Incentive Program.

**II.     For Years, The WinCo Plan Covered Dialysis Like Other Services.**

27.     For many years, DaVita has treated beneficiaries of the WinCo Plan who require dialysis. The WinCo Plan has always covered and today covers dialysis.

28.     On information and belief, the WinCo Plan is a preferred provider organization ("PPO") health plan. A PPO plan incentivizes participants to select healthcare providers who have contracted with the plan for discounted rates, but also covers services rendered by other providers. Many healthcare providers contract with PPO plans because they are willing to accept discounts in exchange for other benefits, such as streamlined claims processing and more reliable payment.

29.     The WinCo Plan provides "network" (or "in-network") coverage for healthcare services on the following terms: (1) beneficiaries visit healthcare providers in the Plan network; (2) the Plan pays network providers at contracted rates; and (3) beneficiaries face financial incentives to select network providers, such as lower copayments, coinsurance amounts, and/or deductibles.

30.     Besides the applicable co-payment and deductible amounts, patients who visit network providers do not face financial responsibility beyond what the Plan pays, because network providers have agreed to accept the Plan's payment as payment in full.

31.     The WinCo Plan provides "out of network" (or "non-network") coverage for healthcare services on the following terms: (1) beneficiaries visit healthcare providers of their choosing; (2) the Plan pays non-network providers the UCR rate, which it defines as "[t]he amount paid for a service in a geographic area based on what Providers in the area charge for the same or similar medical service" (Plan at 106); (3) Plan beneficiaries face financial disincentives

First Amended Complaint                              7

to select non-network providers, including higher copayments, coinsurance amounts, and/or deductibles.

32.     In addition to the applicable co-payment and deductible, patients who visit non-network providers have the responsibility to pay any charged amounts not paid for by the Plan.

33.     Blue Cross of Idaho Health Service, Inc. ("Blue Cross of Idaho") is a third-party claims administrator for the WinCo Plan. In that capacity, Blue Cross of Idaho determines whether to process claims for benefits under the Plan on a network or non-network basis.

34.     On information and belief, Blue Cross of Idaho processed all claims seeking payment for treatment rendered to Plan beneficiaries by healthcare providers who are contracted with Blue Cross of Idaho on a network basis until December 31, 2016.

     a.     The Blue Cross of Idaho network includes providers affiliated with other Blue Cross and Blue Shield insurers across the country. Those companies collectively insure 1 in 3 Americans and contract with more than 96 percent of hospitals and 93 percent of doctors and specialists nationwide.

     b.     DaVita has contracted with Blue Cross of Idaho and other Blue Cross and Blue Shield companies to provide discounted dialysis treatment to their insureds.

35.     Until December 31, 2016, Blue Cross of Idaho processed claims for treatment rendered by DaVita to Plan beneficiaries on a network basis. DaVita received the rates it has negotiated with Blue Cross of Idaho and other Blue Cross and Blue Shield companies.

36.     On information and belief, the Plan provided participants with ESRD with financial incentives to select DaVita and other dialysis providers in the Blue Cross of Idaho network, such as lower copayments, coinsurance amounts, and/or deductibles. DaVita understood that it could not bill beneficiaries for amounts not paid by the Plan, and it did not bill them for

First Amended Complaint                              8

those amounts.

37.     Thus, until December 31, 2016, WinCo Plan beneficiaries had access to DaVita through the Blue Cross network even though DaVita had not directly contracted with the Plan.

## III.    WinCo and EthiCare Try To Cut The Plan's Dialysis Costs At The Expense Of Beneficiaries And Providers.

38.     The WinCo Plan covers over 10,000 current or former WinCo employees and their family members. Based on data publicized by the National Institute of Health and the United States Census Bureau, it is likely that more than 20 Plan beneficiaries now suffer from ESRD. And the number of Plan beneficiaries with ESRD will probably continue to rise.

39.     The WinCo Plan is both insured and funded by the general assets of the sponsor, WinCo Holdings, and on information and belief the Plan funds health benefits through the sponsor's general assets. The Plan also contracts with Blue Cross of Idaho for stop loss insurance with respect to health benefits.

40.     This case arises from the Plan's efforts to save money on dialysis treatment. Upon information and belief, the Plan contracted with EthiCare Advisors, Inc. ("EthiCare"), a New Jersey-based company that purports to specialize in "dialysis claim savings." To achieve the promised savings, EthiCare and the Plan have taken two illegal steps.

### A.     *Step 1: Eliminate network coverage for dialysis.*

41.     On information and belief, the WinCo Plan effectively eliminated network coverage for *dialysis treatment only* as of January 1, 2017—even though the Plan continues to tell participants that they will have in-network options for which the "Plan pays 100%." Plan at 25. DaVita pleads the allegations below on information and belief because Plan beneficiaries received no sufficient notice or explanation of any change in network coverage for dialysis.

First Amended Complaint                              9

42.     Beginning on or about January 1, 2017, the Plan and its agents advised some beneficiaries that they no longer had access to the Blue Cross network of dialysis providers, including DaVita. Instead, the Plan and its agents advised beneficiaries seeking dialysis on a network basis that they must select providers in the "EthiCare network."

43.     On information and belief, the so-called EthiCare network does not exist. DaVita is not a provider in the EthiCare network, nor is it aware of any other dialysis provider who is. If it exists at all, the EthiCare network is negligible in practice and not accessible to beneficiaries who require ongoing dialysis.

44.     EthiCare became a third-party claims administrator for the WinCo Plan with respect to dialysis claims only as of January 1, 2017. In that capacity, EthiCare determines whether to process claims for benefits under the Plan on a network or non-network basis. On information and belief, EthiCare processes *all* dialysis claims on a non-network basis.

45.     Beginning on or about January 1, 2017, the third-party claims administrator for the WinCo Plan no longer processed claims for treatment rendered by DaVita to Plan beneficiaries on a network basis. DaVita no longer receives the rates it has negotiated with Blue Cross of Idaho and other Blue Cross and Blue Shield companies, or with any other company.

46.     On information and belief, Plan participants with ESRD no longer face financial incentives to select DaVita and other dialysis providers in the Blue Cross network or any network, such as lower copayments, coinsurance amounts, and/or deductibles. DaVita understands that it is now free to bill beneficiaries for amounts not paid by the Plan—amounts that are entirely insurmountable for the typical dialysis patient.

47.     On information and belief, since January 1, 2017, Plan beneficiaries with *other* conditions have continued to enjoy access to the Blue Cross network of providers.

First Amended Complaint                                    10

48.     WinCo's elimination of network coverage violates the terms of the WinCo Plan, which tell participants that they *will* have access to a network of dialysis providers. The Plan's schedule of benefits tells participants that in-network coverage exists and that when participants visit in-network providers, the "Plan pays 100% of rate negotiated by Contract Administrator." Plan at 25. And the Plan's description of its coverage for "Dialysis/ESRD" says that the out-of-network UCR rate will apply only when the provider "has not entered into an agreement with [EthiCare]." Plan at 42.

49.     The Plan nowhere tells participants that, in reality, no provider has entered into an agreement with EthiCare. Thus, the WinCo Plan leads participants to believe that they will have access to a network of dialysis providers—but WinCo has not actually made any such network available to its participants.

50.     As a result, no matter which provider a participant with ESRD chooses, she faces responsibility to pay the difference between what the Plan pays and what the provider charges.

   **B.      *Step 2: Reduce usual and customary payment methodology for non-network dialysis providers.***

51.     WinCo did more than just fail to provide a network of dialysis providers. It also drastically reduced its reimbursement rate for out-of-network dialysis treatment, adopting a reimbursement methodology that violates the Plan's own requirements for out-of-network dialysis reimbursement. DaVita pleads the allegations below on information and belief because Plan beneficiaries received no sufficient notice or explanation of any change in the claims-payment methodology with respect to dialysis

52.     The Plan promises to reimburse out-of-network dialysis treatment based on "the UCR rate as defined by the Plan." Plan at 42.

First Amended Complaint                     11

53.     The Plan defines UCR as "[t]he amount paid for a service in a geographic area based on what Providers in the area charge for the same or similar medical service." Plan at 106.

54.     But since January 1, 2017, the Plan has not reimbursed DaVita based on this definition of UCR. Instead, the Plan has simply paid approximately 200% of the rate that Medicare pays for dialysis services.

55.     The Medicare-based rate has nothing to do with "what Providers in the area charge for" dialysis. The Medicare fee schedule is set by the federal government to define the government's payor obligation. It is not based on providers' charges for dialysis in a given geographic area. Indeed, the Medicare rate—approximately $250 per dialysis treatment—is a small fraction of what providers in the area actually charge for dialysis treatment. Dialysis providers in the area charge (and receive) many multiples more than both the Medicare rate and the Medicare-based rate that WinCo in fact pays. Thus, basing out-of-network reimbursement on the Medicare rate, rather than "what Providers in the area charge for" dialysis, violates the terms of the Plan.

56.     Because WinCo has not provided participants the promised network of dialysis providers, Plan participants with ESRD are responsible for paying the full difference between the Plan's reimbursement and the provider's billed charges. That means the lower the Plan's reimbursement rate, the higher the patient's responsibility.

57.     Accordingly, because the Plan's Medicare-based reimbursement method is significantly lower than a proper calculation of UCR as defined by the Plan, participants with ESRD face significantly higher residual payment responsibility than they otherwise would.

First Amended Complaint                        12

**IV.      DaVita Admits and Treats WinCo Plan Beneficiaries.**

58.      This suit arises from DaVita's provision of dialysis to WinCo beneficiaries (the "WinCo Patients"). The WinCo Patients are referred to as Patients 1 through 10 to protect their privacy.[1]

59.      **Patient 1**:

a.      Patient 1 was a member of the WinCo Plan at all relevant times and needed dialysis to treat ESRD.  Patient 1 sought dialysis treatment from DaVita.

b.      Before treating Patient 1, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

c.      Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

d.      During the course of these communications and based on past practice, the Plan led DaVita to believe that it would pay for dialysis for Patient 1 at the contracted rate between DaVita and Blue Cross.  Indeed, in March 2017, DaVita was specifically told that coverage and benefits would stay the same.

e.      In connection with receiving treatment, Patient 1 executed a valid assignment of benefits ("Assignment") to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 1, and also entitles DaVita to assert Patient 1's legal rights under ERISA and other applicable law. These legal rights include

---

[1] In an abundance of caution and out of concern for patient privacy, DaVita has not pleaded details about the WinCo Patients' dates of service (other than year), treatment facilities or other identifying information. DaVita is willing to supply Defendants additional reasonable information to identify the patients. DaVita will supply information upon Defendants' request, but only in a manner that complies with all federal and state privacy laws.

the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

f.      After providing treatment to Patient 1, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 1.

g.      Each UB-04 typically covered less than one week of treatment. Patient 1 has been receiving dialysis treatment from DaVita since early 2017, and so DaVita has sent numerous completed UB-04 forms to the Plan.

h.      In response to the claims submitted by DaVita, WinCo paid DaVita at a Medicare-based rate that was far lower than either DaVita's contracted rate with Blue Cross or the UCR rate called for by the Plan.

i.      Pursuant to the Plan's internal appeal process, DaVita appealed the Plan's decision to Blue Cross of Idaho. In its correspondence, DaVita reiterated that it had obtained an assignment from Patient 1.

j.      Blue Cross of Idaho did not respond.  Instead, on behalf of Blue Cross of Idaho and the Plan, EthiCare sent DaVita a letter denying the appeal and informing DaVita that it was entitled to file suit under ERISA. Patient 1's administrative remedies are therefore exhausted.

k.      Patient 1 continues to receive treatment from DaVita. EthiCare has continued to authorize payment to be sent directly to DaVita, but at levels far less than either DaVita's contracted rate with Blue Cross or the UCR rate called for by the Plan.

60.    **Patient 2**:

a.      Patient 2 was a member of the WinCo plan at all relevant times and needed dialysis to treat ESRD. Patient 2 sought dialysis treatment from DaVita.

b.      Before treating Patient 2, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

c.      Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

d.      During the course of these communications and based on past practice, the Plan led DaVita to believe that it would pay for dialysis for Patient 2 at the contracted rate between DaVita and Blue Cross.

e.      In connection with receiving treatment, Patient 2 executed a valid Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 2, and also entitles DaVita to assert Patient 2's legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

f.      After providing treatment to Patient 2, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-

First Amended Complaint                    15

04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 2.

g.      Each UB-04 typically covered less than one week of treatment. Patient 2 has been receiving dialysis treatment from DaVita since 2016, and so DaVita has sent numerous completed UB-04 forms to the Plan.

h.      In response to the claims submitted by DaVita, the Plan paid DaVita at a Medicare-based rate that was far less than either its contracted rate with Blue Cross or the UCR rate called for by the Plan.

i.      Pursuant to the Plan's internal appeal process, DaVita appealed the Plan's decision to Blue Cross of Idaho. In its correspondence, DaVita reiterated that it had obtained an assignment from Patient 2.

j.      When Blue Cross of Idaho did not respond within the required 30 days, DaVita sent a second appeal letter. Blue Cross of Idaho did not respond to this letter either. Patient 2's administrative remedies are therefore exhausted.

k.      Patient 2 continues to receive treatment from DaVita. EthiCare has continued to authorize payment to be sent directly to DaVita, but at levels far less than either DaVita's contracted rate with Blue Cross or the UCR rate called for by the Plan.

61.    **Patient 3**:

a.      Patient 3 was a member of the WinCo plan at all relevant times and needed dialysis to treat ESRD. Patient 3 sought dialysis treatment from DaVita.

b.      Before treating Patient 3, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

First Amended Complaint                    16

c.      Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

d.      During the course of these communications and based on past practice, the Plan led DaVita to believe that it would pay for dialysis for Patient 3 at the contracted rate between DaVita and Blue Cross.

e.      In connection with receiving treatment, Patient 3 executed a valid Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 3, and also entitles DaVita to assert Patient 3's legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

f.      After providing treatment to Patient 3, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 3.

g.      Each UB-04 typically covered less than one week of treatment. Because Patient 3 has been receiving dialysis treatment from DaVita since 2016, DaVita has sent numerous completed UB-04 forms to the Plan.

h.      In response to the claims submitted by DaVita, the Plan paid DaVita at a Medicare-based rate that was far less than either its contracted rate with Blue Cross or the

First Amended Complaint                    17

UCR rate called for by the Plan.

      i.     Patient 3 continues to receive treatment from DaVita. EthiCare has continued to authorize payment to be sent directly to DaVita, but at levels far less than either DaVita's contracted rate with Blue Cross or the UCR rate called for by the Plan.

62.    **Patient 4**:

      a.     Patient 4 was a member of the WinCo plan at all relevant times and needed dialysis to treat ESRD. Patient 4 sought dialysis treatment from DaVita.

      b.     Before treating Patient 4, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

      c.     Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

      d.     During the course of these communications and based on past practice, the Plan led DaVita to believe that it would pay for dialysis for Patient 4 at the contracted rate between DaVita and Blue Cross.

      e.     In connection with receiving treatment, Patient 4 executed a valid Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 4, and also entitles DaVita to assert Patient 4's legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

First Amended Complaint             18

f.      After providing treatment to Patient 4, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 4.

g.      Each UB-04 typically covered less than one week of treatment. Patient 4 received dialysis treatment from DaVita beginning in 2014 and continuing through 2017, and so DaVita sent numerous completed UB-04 forms to the Plan.

h.      In response to the claims submitted by DaVita, the Plan paid DaVita at a Medicare-based rate that was far less than either its contracted rate with Blue Cross or the UCR rate called for by the Plan.

63.    **Patient 5**:

a.      Patient 5 was a member of the WinCo plan at all relevant times and needed dialysis to treat ESRD. Patient 5 sought dialysis treatment from DaVita.

b.      Before treating Patient 5, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

c.      Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

d.      During the course of these communications and based on past practice, the Plan led DaVita to believe that it would pay for dialysis for Patient 5 at the contracted rate between DaVita and Blue Cross.

First Amended Complaint                         19

e.     In connection with receiving treatment, Patient 5 executed a valid Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 5, and also entitles DaVita to assert Patient 5's legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

f.     After providing treatment to Patient 5, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 5.

g.     Each UB-04 typically covered less than one week of treatment. Patient 5 received dialysis treatment from DaVita beginning in 2016 and continuing through 2017, and so DaVita has sent numerous completed UB-04 forms to the Plan.

h.     In response to the claims submitted by DaVita, the Plan paid DaVita at a Medicare-based rate that was far less than either its contracted rate with Blue Cross or the UCR rate called for by the Plan.

64.     **Patient 6**:

a.     Patient 6 was a member of the WinCo plan at all relevant times and needed dialysis to treat ESRD.

b.     Before treating Patient 6, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

First Amended Complaint                    20

c.       Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

d.       During the course of these communications and based on past practice, the Plan led DaVita to believe that it would pay for dialysis for Patient 6 at the contracted rate between DaVita and Blue Cross.

e.       In connection with receiving treatment, Patient 6 executed a valid Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 6, and also entitles DaVita to assert Patient 6's legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

f.       After providing treatment to Patient 6, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 6.

g.       Each UB-04 typically covered less than one week of treatment. Patient 6 received dialysis treatment from DaVita beginning in 2014 and continuing through 2017, and so DaVita sent numerous completed UB-04 forms to the Plan.

First Amended Complaint                    21

h.      In response to the claims submitted by DaVita, the Plan paid DaVita at a Medicare-based rate that was far less than either its contracted rate with Blue Cross or the UCR rate called for by the Plan.

65.   **Patient 7**:

a.      Patient 7 was a member of the WinCo Plan at all relevant times and needed dialysis to treat ESRD.  Patient 7 sought dialysis treatment from DaVita.

b.      Before treating Patient 7, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

c.      Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

d.      In connection with receiving treatment, Patient 7 executed a valid Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 7, and also entitles DaVita to assert Patient 7's legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

e.      After providing treatment to Patient 7, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 7.

First Amended Complaint                             22

f.       Each UB-04 typically covered less than one week of treatment. Patient 7 has been receiving dialysis treatment from DaVita since 2017, and so DaVita has sent numerous completed UB-04 forms to the Plan.

g.       In response to the claims submitted by DaVita, WinCo paid DaVita at a Medicare-based rate that was far lower than either DaVita's contracted rate with Blue Cross or the UCR rate called for by the Plan.

h.       Pursuant to the Plan's internal appeal process, DaVita appealed the Plan's decision to Blue Cross of Idaho. In its correspondence, DaVita reiterated that it had obtained an assignment from Patient 7.

i.       When Blue Cross of Idaho did not respond within the required 30 days, DaVita sent a second appeal letter. Blue Cross of Idaho did not respond to this letter either. Patient 7's administrative remedies are therefore exhausted.

66.    **Patient 8**:

a.       Patient 8 was a member of the WinCo Plan at all relevant times and needed dialysis to treat ESRD.  Patient 8 sought dialysis treatment from DaVita.

b.       Before treating Patient 8, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

c.       Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

d.       During the course of these communications and based on past practice, the Plan led DaVita to believe that it would pay for dialysis for Patient 8 at the contracted rate between DaVita and Blue Cross.

First Amended Complaint                              23

e.      In connection with receiving treatment, Patient 8 executed a valid Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 8, and also entitles DaVita to assert Patient 1's legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

f.      After providing treatment to Patient 8, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 8.

g.      Each UB-04 typically covered less than one week of treatment. Patient 8 received dialysis treatment from DaVita from late 2016 to late 2017, and so DaVita has sent numerous completed UB-04 forms to the Plan.

h.      In response to the claims submitted by DaVita, WinCo paid DaVita at a Medicare-based rate that was far lower than either DaVita's contracted rate with Blue Cross or the UCR rate called for by the Plan.

i.      Pursuant to the Plan's internal appeal process, DaVita appealed the Plan's decision to Blue Cross of Idaho. In its correspondence, DaVita reiterated that it had obtained an assignment from Patient 8.

j.      Blue Cross of Idaho did not respond. Instead, on behalf of Blue Cross of Idaho and the Plan, EthiCare sent DaVita a letter denying the appeal and informing DaVita

that it was entitled to file suit under ERISA. Patient 8's administrative remedies are therefore exhausted.

67. **Patient 9**:

    a.    Patient 9 was a member of the WinCo Plan at all relevant times and needed dialysis to treat ESRD.  Patient 9 sought dialysis treatment from DaVita.

    b.    Before treating Patient 9, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

    c.    Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

    d.    In connection with receiving treatment, Patient 9 executed a valid assignment of benefits Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 9, and also entitles DaVita to assert Patient 9's legal rights under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

    e.    After providing treatment to Patient 9, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 9.

First Amended Complaint          25

f.      Each UB-04 typically covered less than one week of treatment. Patient 9 has been receiving dialysis treatment from DaVita since 2017, and so DaVita has sent numerous completed UB-04 forms to the Plan.

g.      In response to the claims submitted by DaVita, WinCo paid DaVita at a Medicare-based rate that was far lower than either DaVita's contracted rate with Blue Cross or the UCR rate called for by the Plan.

h.      Pursuant to the Plan's internal appeal process, DaVita appealed the Plan's decision to Blue Cross of Idaho. In its correspondence, DaVita reiterated that it had obtained an assignment from Patient 9.

i.      When Blue Cross of Idaho did not respond within the required 30 days, DaVita sent a second appeal letter. Blue Cross of Idaho did not respond to this letter either. Patient 9's administrative remedies are therefore exhausted.

68.   **Patient 10**:

a.      Patient 10 was a member of the WinCo Plan at all relevant times and needed dialysis to treat ESRD.  Patient 10 sought dialysis treatment from DaVita.

b.      Before treating Patient 10, DaVita representatives followed standard procedures for the intake and treatment of patients and the receipt of payment therefor.

c.      Those procedures include contacting WinCo Plan representatives to verify coverage, to receive authorization to provide treatment, and/or to exchange other necessary information.

d.      In connection with receiving treatment, Patient 10 executed a valid Assignment to DaVita. The Assignment gives DaVita the right to be paid directly for any services rendered to Patient 10, and also entitles DaVita to assert Patient 10's legal rights

First Amended Complaint                    26

under ERISA and other applicable law. These legal rights include the right to recover benefits, to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA and other applicable law. The Assignment also appointed DaVita as the patient's "authorized representative."

e.      After providing treatment to Patient 10, DaVita sought payment from the WinCo Plan. DaVita did so by submitting the necessary information via the standard "UB-04" form, indicating, *inter alia*, the dates of treatment (for which DaVita was seeking payment) and the particular treatment provided. Each UB-04 also indicated that DaVita had obtained an assignment from Patient 10.

f.      Each UB-04 typically covered less than one week of treatment. Patient 10 has been receiving dialysis treatment from DaVita since 2018, and so DaVita has sent numerous completed UB-04 forms to the Plan.

g.      In response to the claims submitted by DaVita, WinCo paid DaVita at a Medicare-based rate that was far lower than either DaVita's contracted rate with Blue Cross or the UCR rate called for by the Plan.

h.      Pursuant to the Plan's internal appeal process, DaVita appealed the Plan's decision to Blue Cross of Idaho. In its correspondence, DaVita reiterated that it had obtained an assignment from Patient 10.

i.      When Blue Cross of Idaho did not respond within the required 30 days, DaVita sent a second appeal letter. Blue Cross of Idaho did not respond to this letter either. Patient 10's administrative remedies are therefore exhausted.

69.      DaVita has had similar experiences with other beneficiaries of the WinCo Plan. DaVita contacted WinCo before treating these beneficiaries and was led to believe it would be

First Amended Complaint                    27

paid at the contracted rate; like Patients 1-10, these beneficiaries executed a valid Assignment to DaVita; and like Patients 1-10, the Plan paid DaVita at a Medicare-based rate that was far less than either its contracted rate with Blue Cross or the UCR rate called for by the Plan.

70.   Payment of less than the full billed rate is an "adverse benefit determination" under ERISA. *See* 29 C.F.R. § 2560.503-1(m)(4) (defining "adverse benefit determination" as including: "A denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part)" for a claimed benefit).

71.   ERISA requires plans making adverse benefit determinations to follow certain procedures.

a.   Generally speaking, plans must propound denials in writing, set forth the specific reasons for such a denial, and afford a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim. *See generally* 29 U.S.C. § 1133.

b.   Among other things, the plan or its representative must explain, "in a manner calculated to be understood by the claimant (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and] (iv) a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. . . ." 29 C.F.R. § 2560.503-1(g)(i)-(iv). *See also* 29 C.F.R. § 2590.715-2719(b).

72.     The WinCo Plan did not issue a denial of any Patient's claims that complied with ERISA's requirements. Accordingly, DaVita was entitled to file suit immediately in federal court seeking relief under ERISA. *See* 29 C.F.R. § 2560.503-1(l) ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies . . . ."); 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F) (deemed exhaustion).

73.     Nonetheless, to avoid litigation, DaVita retained experienced ERISA counsel to write WinCo regarding changing—or at least explaining—its improper claims handling and denials. DaVita sent two letters to WinCo and another to EthiCare, detailing at length how their conduct was improper, seeking documents on behalf of the WinCo Patients, and demanding that WinCo and EthiCare stop their illegal practices. These efforts proved unsuccessful. Thus, for any Patient whose administrative remedies were not already exhausted, further efforts at non-judicial resolution would have been futile. DaVita accordingly filed this suit to seek relief.

### COUNT ONE[2]

### *Against All Defendants*

#### (*Benefits Under ERISA*)

74.     DaVita re-alleges each paragraph of this Complaint as if fully set forth herein.

75.     ERISA beneficiaries are entitled to receive the benefits promised under the terms of the plan of which they are members.

---

[2] Consistent with *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc), DaVita does not include in the First Amended Complaint any claims dismissed with prejudice.

First Amended Complaint                    29

76.     The terms of the WinCo Plan tell ESRD beneficiaries that they will have access to a network of dialysis providers. In reality, however, WinCo has not provided the promised network to its participants. WinCo's failure to do so violates the Plan's terms.

77.     Nor does the Plan allow WinCo to pay dialysis providers at the rate DaVita was here paid. Absent a contractual agreement establishing a negotiated rate, DaVita is entitled under the Plan to be paid the UCR rate.

78.     The Plan defines UCR as "[t]he amount paid for a service in a geographic area based on what Providers in the area charge for the same or similar medical service." Plan at 106.

79.     The Medicare-based rate at which WinCo has reimbursed DaVita has essentially no relation to—and is far lower than—"what Providers in the area charge for" dialysis.

80.     Thus, reimbursing out-of-network dialysis treatment at a Medicare-based rate violates the Plan's terms.

81.     WinCo's illegal elimination of the Plan's dialysis network has left participants financially responsible for the full difference between the Plan's reimbursement rate and DaVita's billed charges. If WinCo had provided the promised network, patients would not face this financial responsibility. Thus, to the extent Patients 1-10 are entitled under the Plan to a network of dialysis providers, they have suffered damages in the full amount of their residual payment responsibility.

82.     Alternatively, even if Patients 1-10 are not entitled to a dialysis network, WinCo's Medicare-based reimbursement rate has significantly increased their residual financial responsibility. The less the Plan pays, the more the patients owe. Thus, Patients 1-10 have, at minimum, been damaged by the difference between WinCo's Medicare-based rate and a proper calculation of UCR as defined by the Plan.

83.     DaVita, as assignee of Patients 1-10, is entitled to relief under 29 U.S.C. § 1132(a)(1)(B), as well as attorneys' fees under 29 U.S.C. § 1132(g).

## COUNT TWO

### *Against All Defendants*

(*Promissory Estoppel and Quantum Meruit Under State Law*)

84.     DaVita re-alleges each paragraph of this Complaint as if fully set forth herein.

85.     WinCo and its agents misled DaVita about the payments they could expect for rendering services. As explained above, DaVita's staff contacted Plan representatives before treating beneficiaries of the WinCo Plan. In the past, DaVita was paid no worse than in-network rates, and during the course of its interactions with plan representatives, DaVita was led to believe that that level of payment (at a minimum) would continue. It did not, but DaVita understandably relied on that mistaken belief to its detriment by, *inter alia*, providing care for which it has not been fully compensated.

86.     These facts warrant relief under state law theories of promissory estoppel and quantum meruit.

87.     Promissory estoppel relief is available under state law when there is (1) a promise to pay for services rendered; (2) foreseeable and justifiable reliance by the Plaintiff; and (3) resulting damages. All occurred here. WinCo should therefore be estopped from paying DaVita anything less than in-network, as WinCo led it to believe it would receive.

88.     The quantum meruit remedy permits a party to recover the reasonable value of services rendered based on an implied promise to pay. It is available under state law where the conduct of the parties allows the dual inferences that one performed at the other's request and that

the requesting party promised to pay. That is precisely what happened here. DaVita is therefore entitled to reasonable value for its services.

89.     DaVita—in its own right as a provider—accordingly seeks relief under state law theories of negligent misrepresentation, promissory estoppel, and quantum meruit.

## PRAYER FOR RELIEF

WHEREFORE, DaVita prays for judgment against Defendants as follows:

1.     For equitable relief and monetary relief, in an amount to be proven at trial;

2.     For all attorneys' fees and costs incurred in bringing this action, to the extent recoverable by law;

3.     For an order declaring DaVita's rights and enjoining Defendants from continuing their illegal practices; and

4.     For all other relief the Court deems appropriate, proper, and just.


Dated: August 16, 2019

By: /s/ Brendan S. Maher
       Brendan S. Maher

Peter K. Stris
Brendan S. Maher
Rachana A. Pathak
John Stokes
**STRIS & MAHER LLP**
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

Jay Gustavsen
**DAVISON, COPPLE, COPPLE & COPPLE**
199 N. Capitol Blvd., Ste. 600
Boise, ID 83702
T: (208) 342-3658

Attorneys for Plaintiffs STAR DIALYSIS, LLC;
ORDUST DIALYSIS, LLC; ROUTT DIALYSIS,
LLC; PANTHER DIALYSIS, LLC; DAVITA INC.